KIMBERLY *v.* ARMS *et ux.*

(*Circuit Court, N. D. Ohio, E. D.* November 22, 1889.)

1. EQUITY—BILL OF REVIEW—PENDING APPEAL TO SUPREME COURT.
    The circuit court cannot entertain a bill of review to vacate a decree, from which the petitioners have prayed, and been allowed, an appeal to the supreme court, though they aver that they do not intend to perfect their appeal in the supreme court.

2. SAME—DECREE ENTERED IN PURSUANCE OF MANDATE.
    Where the circuit court has, under and in pursuance of a mandate from the supreme court, entered a decree, it cannot entertain a bill to review such decree, either for errors of law apparent or for newly-discovered evidence, without leave first had from the supreme court.

3. SAME—ERRONEOUS CONCLUSIONS FROM EVIDENCE.
    A bill of review cannot be entertained to correct supposed erroneous deductions or conclusions from the evidence.

4. SAME—FAILURE TO AVER PERFORMANCE.
    The proposed bill must aver performance of, or inability to perform, the decree sought to be reviewed.

5. SAME—FRAUD AND PERJURY.

A bill of review sought on the ground of fraud and perjury will not be entertained, where it appears that the alleged fraudulently procured and perjured evidence was not controlling in the determination of the case on its merits.

6. SAME—ALLEGATIONS OF DEFENSE ON MERITS.

In order to obtain relief on the ground of fraud, it must be averred and shown that there was a valid defense on the merits.

7. SAME—LEAVE OF COURT.

Though a bill of review on the ground of fraud in obtaining the decree may be filed without leave of the court granting the decree, where that ground of relief is united in the same bill with others, which require such previous leave, the bill cannot be separated and leave granted as to part and refused as to the others.

In Equity. On application for leave to file a bill of review.

*A. W. Jones* and *Judge Griffith*, for Kimberly.

*Stevenson Burke*, for Arms and wife.

JACKSON, J. Under and in pursuance of a mandate of the supreme court of the United States, a final decree in favor of complainant, Kimberly, was entered in this cause in May, 1889. The defendants Arms and wife now make application to this court for leave to file a bill of review, for the purpose of vacating and setting aside that decree. The grounds chiefly relied on for annulling said decree, as set forth in the bill of review sought to be filed, are alleged errors of law apparent on the face of the record, newly-discovered evidence, and fraud on the part of Kimberly in procuring said decree. It appears from the record in the case and the proposed bill of review, which is presented with the application for leave to file, that in 1878 complainant, Kimberly, and defendant Charles D. Arms entered into partnership for the purchase of mining interests and properties,—Arms being the active partner in making the purchases and conducting the business of the firm; that in 1879, while said partnership was still in existence, Arms, in connection with one Fairbanks, purchased an interest in the Grand Central mine, in Arizona. In 1880 the partnership of Kimberly & Arms terminated, and thereafter a controversy arose between them as to the interest acquired by Arms in said Grand Central mining property. Kimberly claimed that this acquisition, to the extent of Arms' interest therein, was partnership property, in which he was entitled to share. This claim was denied by Arms, who insisted that it was purchased on his private account. Thereupon Kimberly, in September, 1881, filed his bill in this court, charging and alleging that Arms' interest in said Grand Central mine was partnership property; that Arms had agreed with him in advance to make the purchase on joint account, and, after it was acquired, had repeated that he had made it as agreed. Kimberly sought to have his interest declared, and for an account of profits. Arms answered the bill, denying the alleged agreement to purchase said interest on joint account, and insisting that it was well understood and agreed between himself and Kimberly that said purchase was made solely on account of himself and said Fairbanks. As a corroboration of his statement of the transaction, and as a further answer to the relief sought by Kimberly, Arms set up the defense that in March, 1880, there was a settlement of all partnership matters between himself and Kimberly; that in that settle-

ment it was understood and agreed that he was to, and that he did, reserve to himself, as his absolute property, said interest in the Grand Central mine, etc. Such were the main issues made by the pleadings. After much testimony was taken on both sides, the parties, by consent, had the case referred to Hon. R. A. Harrison, as special master, to hear the evidence, and decide all the issues between them, with directions to make his report to the court in the premises, stating therein separately his findings of law and fact. In April, 1885, the special master made his report to this court, finding generally all the issues of fact and conclusions of law in favor of said Kimberly. To this report the defendants filed various exceptions. Said report and exceptions came on for hearing before Circuit Justice MATTHEWS, who sustained said exceptions, set aside the master's report, and dismissed the bill. From this decree, Kimberly appealed to the supreme court of the United States. The cause was heard on appeal in that court, and on March 5, 1889, a decision was rendered, reversing the decree below and remanding the cause to this court, with directions to confirm the report of the special master, and to take further proceedings not inconsistent with the opinion of the supreme court. See *Kimberly* v. *Arms*, 129 U. S. 512–530, 9 Sup. Ct. Rep. 355. In conformity with, and under the directions of, said mandate of the supreme court, this court, in May, 1889, confirmed said report of the special master, and entered a final decree in Kimberly's favor, in accordance with its findings of fact and conclusions of law.

The bill of review, which defendants now apply for leave to file, seeks to open, vacate, and set aside that decree. But before making said application the defendants, during the term of court at which said decree was rendered, prayed an appeal to the supreme court, which was allowed upon their giving bond, with sureties, to be approved by the court. Such appeal-bond was duly executed and approved, and said appeal, so far as this court is concerned, was thereby perfected before defendants presented this application for leave to file a bill of review. It is, however, stated in the bill of review which defendants ask leave of this court to file that it is not the purpose of defendants, as at present advised, to perfect their said appeal by filing the record and docketing this cause in the supreme court, as required by the rules of practice of that court. This averment does not, of course, amount to an abandonment of said appeal, nor to a definite purpose or intention to do so, but leaves the question of its further prosecution to the option of appellants. No new proceedings having been had in this court between the mandate of the supreme court and the decree based thereon, said appeal by defendants was no doubt improvidently taken and allowed. Still, it has the effect of transferring the cause, and the decree sought to be reviewed, into the supreme court, where it will remain until heard and disposed of on the merits, or dismissed, under the provisions of the ninth rule of said court, for appellants' failure to file the record and docket the case. The authorities settle that an appeal, in cases thus situated, will not be entertained by the supreme court. *Stewart* v. *Salamon*, 97 U. S. 361; *Humphrey* v. *Baker*, 103 U. S. 736; *Hinckley* v. *Mor-*

*ton*, Id. 764. With said appeal pending in the supreme court, whether there rightfully or improvidently, this court clearly has no authority or jurisdiction to entertain a bill of review to impeach said decree, over which it has, for the present, at least, [no jurisdiction.]

A party cannot concurrently pursue the two remedies of appeal and bill of review for error apparent on the record, as the latter is only a substitute for, or in the nature of, a writ of error or appeal. It is accordingly settled (*Ensminger* v. *Powers*, 108 U. S. 302, 303, 2 Sup. Ct. Rep. 643) that while an appeal is pending in the supreme court, although there is no *supersedeas*, the circuit court has no jurisdiction to vacate the decree in pursuance of the prayer of the bill of review, because such relief is beyond its control. The appeal of Arms and wife having taken this cause, and the decree complained of, beyond the control of this court, thus depriving it of all authority, pending said appeal, to grant the relief sought by the proposed bill of review, leave to file the same cannot, for that reason, be properly granted.

But, aside from this difficulty in the way of granting defendants leave to file a bill of review, there are other objections, of a still more serious character, to the allowance of their application by this court. The decree of May, 1889, which the proposed bill of review seeks to impeach, is the decree, not of this court, but of the supreme court; and the only power which this court can rightfully exercise over the same is to carry it into execution. Thus, in *Stewart* v. *Salamon*, 97 U. S. 361, it is said that "an appeal will not be entertained by this court from a decree entered in the circuit or other inferior court, in exact accordance with our mandate upon a previous appeal. Such a decree, when entered, is in effect our decree; and the appeal would be from ourselves to ourselves. If such an appeal is taken, however, we will, upon the application of the appellee, examine the decree entered, and, if it conforms to the mandate, dismiss the case, with costs. If it does not, the case will be remanded, with appropriate directions, for the correction of the error." So, in *Humphrey* v. *Baker*, 103 U. S. 737, it is said: "The decree we directed is the final decree in the original suit, and the court below had nothing to do but to carry it into execution, under the rule established in *Stewart* v. *Salamon*." Even the objection of a want of jurisdiction on the part of this court cannot be entertained in respect to a cause remanded to it by the supreme court for further proceedings. This was so ruled at an early day in *Skillern's Ex'rs* v. *May's Ex'rs*, 6 Cranch. 267, where, after a case was remanded by the supreme court, with directions for further proceedings therein, it appeared that the cause was not one coming within the jurisdiction of the court. It was held, nevertheless, that the circuit court was bound to carry the mandate into execution. So, in *Ex parte Story*, 12 Pet. 339, the action of the court below in refusing to allow the defendant to file a supplemental plea and answer setting up new matter was sustained because the case was before it upon a mandate from the supreme court, and the court below was bound to execute the mandate. To the same effect is the case of *Ex parte Sibbald*, Id. 488, where it was held that "the inferior court is bound by the decree, [of the supreme

court,] as the law of the case, and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution, or give any other or further relief." In *Ex parte Railroad Co.*, 1 Wall. 69, the court below, after entering judgment according to the mandate of the supreme court, granted a motion for a new trial upon affidavits of new and material facts; but the supreme court issued a *mandamus* commanding the lower court to vacate and set aside the order awarding said new trial, on the ground that the authority of the court extended only to the execution of the mandate. In that case it was said by the supreme court:

"When this court, under the twenty-fourth section of the judiciary act, reverses a judgment of a case stated, and brought here on error, remanding the case, with a mandate to the court below to enter judgment for the defendant, the court below has no authority but to execute the mandate, and it is final in that court. Hence such court cannot, after entering a judgment, hear affidavits or testimony and grant a rule for a new trial; and if it does grant such rule a *mandamus* will issue from this court, ordering it to vacate the rule."

By reference to this case, it will be seen that it was originally tried upon an agreed statement of facts, resulting in a judgment for the plaintiff. The defendants sued out a writ of error to the supreme court, which reversed the judgment of the court below, and remanded the case, with a mandate to the lower court to enter judgment for the defendants. The court below entered judgment for the defendant. Thereafter the plaintiff filed affidavits showing new facts, and moved the court for a new trial, which was granted. But the supreme court issued its *mandamus* to said court, commanding it to vacate the order granting such new trial. If the judgment in question had been in any sense the judgment of the lower court, its authority to award a new trial upon newly-discovered and material facts could not have been questioned. But, as the judgment entered in pursuance of the mandate was that of the supreme court, the district court was without authority to vacate or set it aside for any error in law or new matter of facts. The principle announced in the foregoing authorities is essential to the close and proper subordination of inferior to superior courts, to the orderly administration of justice, and to the prevention of interminable litigation.

In harmony with this rule laid down in the above decisions, it is settled that the granting of leave to file a bill of review for error of law apparent, or for newly-discovered evidence, rests in the sound discretion of the court. It may be refused although the facts, if admitted, would change the decree, where the court, considering all the circumstances, may deem it unadvisable. Story, Eq. Pl. § 417, and cases cited. As bills of review for error apparent and for new matter can only be filed by leave of the court, such leave must properly be applied for and procured from the court whose decree is complained of. In the present case the mandate of the supreme court not only directed an absolute and final decree in Kimberly's favor, but, under the authorities, made that decree the judgment or decree of the supreme court. This court has no authority

to review or vacate that decree for alleged errors of law apparent on the face of the record, nor can it properly entertain such a bill for newly-discovered evidence until application has been first made to the supreme court, which pronounced or directed the decree, and its leave obtained to file the same. The court rendering the decree should properly exercise the discretion of granting or withholding leave to the unsuccessful party to file a bill of review to impeach or set it aside either for error apparent or for new matter. The inferior court should not be called upon to exercise such discretion, or to grant such leave, in respect to a decree of a superior court, over whose judgment it possesses no control or right of supervision. It is accordingly the better if not the settled practice, in cases like the present, to require the application for leave to file a bill of review to be made to the supreme court. Thus, in *Southard* v. *Russell*, 16 How. 570, the supreme court, speaking by Justice NELSON, say:

"As already stated, the decree sought to be set aside by this bill of review in the court below was entered in pursuance of the mandate of this court, on an appeal in the original suit. It is therefore the decree of this court, and not that primarily entered by the court below, that is sought to be interfered with. The better opinion is that a bill of review will not lie at all from errors of law alleged on the face of the decree after the judgment of the appellate court. These may be corrected by a direct application to that court, which would amend, as matter of course, any error of the kind that might have occurred in entering the decree. Nor will a bill of review lie, in the case of newly-discovered evidence, after the publication or decree below, where a decision has taken place on an appeal, unless the right is reserved in the decree of the appellate court, or permission be given on an application to that court directly for the purpose. This appears to be the practice of the court of chancery and house of lords in England, and we think it founded on principles essential to the proper administration of the law, and to a reasonable termination of litigation between parties in chancery suits. Neither of these prerequisites to the filing of the bill before us have been observed."

The court cite numerous cases, English and American, in support of the rule thus announced. Counsel for applicants claim that the cases cited do not sustain the court's conclusions. We need not, however, go into the consideration of that question, as the rule laid down, whether supported by the authorities cited or not, is binding upon this court. But by reference to the case of *Barbon v Searle*, 1 Vern. 418, cited by Justice NELSON, it will be seen that the rule laid down in *Southard* v. *Russell* conforms to the practice of the English chancery court. In that case a bill of discovery was filed for the purpose of bringing before the house of lords, on bill of review, a deed which complainant alleged had been burned pending the appeal in the house of lords. It was alleged that the defendant had destroyed this deed; and complainant asked for a discovery, to the end that he might submit the fact to the house of lords upon an application for leave to file a bill of review to vacate its judgment in the case. The chancellor ordered the defendant to answer as to whether or not he had burned the deed; but he further ordered that the case should proceed no further without special leave, which was done for the purpose of allowing the complainant to bring before the lords the suppressed deed, in making application to that appellate

court for leave to file a bill of review.   So, too, in *Haskell* v. *Raoul*, 1 Mc-
Cord, Eq. 22–29, where an application was made to the chancery court
to modify or change the decree or judgment rendered by the appellate
court, COLCOCK, J., said:

"No arguments were used, nor authority adduced, to show that the chan-
cellor had the power to enlarge or modify the decree made by the appeal court.
Nor, indeed, can any be conceived; for, if he had power to alter, in the small-
est particular, the decree, the same power would have authorized him to re-
verse it entirely, which would involve a manifest absurdity," etc.

The supreme court, in case of *U. S.* v. *Knight*, 1 Black, 489, reassert
the rule laid down in *Southard* v. *Russell*, and say upon this question, as
to the correct practice in cases like the present:

"The defeated party, upon the discovery of new evidence, may, after a
final decree in this court, obtain leave here to file a bill of review in a court
below, to review the judgment which this court had rendered."

In conformity with the rule announced in *Southard* v. *Russell*, and *U.
S.* v. *Knight*, petitions were presented to the supreme court in the cases
of *Bentley* v. *Coyne*, 4 Wall. 509, and *Rubber Co.* v. *Goodyear*, 9 Wall.
805, asking for leave to file bills of review for alleged errors in the judg-
ments or decrees of said court.   We think the foregoing authorities es-
tablish the rule that where a final decree has been entered in an inferior
court, under and in pursuance of a mandate from the supreme court,
such inferior court cannot, without leave first had and obtained from the
supreme court, entertain a bill of review, at the instance of the defeated
party, to vacate or annul such decree.   Any other rule of practice would
reverse the order of judicial procedure, and permit the subordinate tri-
bunal to sit in judgment on the decree of its superior or appellate court.
It should not be assumed that the supreme court would deny such an
application in any case where leave to review its decision should prop-
erly be granted.

Counsel for defendants insist that this rule of requiring application
for leave to file a bill of review, in cases like the present, to be made to
the supreme court, is not uniformly observed, and that at most it is ad-
ministrative, rather than jurisdictional.   He cites *Ricker* v. *Powell*, 100
U. S. 104, in which it is claimed that a bill of review was allowed after
decree below had been affirmed in the supreme court.   But it will be
seen by reference to the case that Ricker, who filed a bill of review, did
not appeal to the supreme court; that there was no judgment of that
court as to him; that the decree which he sought to review was not the
decree of the supreme court, but solely and only of the circuit court,
which might, therefore, so far as Ricker was concerned, entertain a bill
of review without in any wise contravening the rule laid down in *South-
ard* v. *Russell*.   Whether the rule under consideration is administrative
rather than jurisdictional, it is not important to determine.   The mate-
rial question is, should this court, in respect to decrees of the supreme
court, exercise the discretion of granting leave to attack such decrees, or
should such leave be obtained from the court which pronounced the
judgment?   We are clearly of the opinion that the application should

be made to, and leave procured from, the supreme court in the present case, before this court can properly sanction the filing of the proposed bill.

But, aside from the objection that defendants have not made their application for leave to the right court, it appears from the proposed bill of review that the errors of law alleged to exist in the case are nothing more than supposed erroneous deductions or conclusions from the evidence. A bill of review will not lie to correct such errors. The only questions open for examination on bill of review for errors of law on the face of the record are such as arise on the pleadings, proceedings, and decree, exclusive of the evidence, which cannot be looked to or considered. The party setting up error apparent as ground of relief cannot go into the evidence at large to establish objections to the decree founded on supposed mistake of the court in its deductions from the evidence. *Whiting* v. *Bank*, 13 Pet. 6; *Buffington* v. *Harvey*, 95 U. S. 99; *Shelton* v. *Van Kleeck*, 106 U. S. 532, 1 Sup. Ct. Rep. 491.

Again, if the discretion vested with this court to grant the leave applied for, the proposed bill of review is fatally defective in not averring or alleging that the defendants have either performed or are unable, by reason of poverty or otherwise, to perform the decree rendered against them. In *Ricker* v. *Powell*, 100 U. S. 104, it is said that "the rule is well settled, subject, however, to some exceptions, that 'before a bill of review * * * can be filed the decree must be first obeyed and performed. * * * Thus, if money is directed to be paid, it ought to be paid before the bill of review is filed, though it may afterwards be ordered to be refunded.'" After citing numerous authorities the court quotes from Chancellor Kent as follows, (page 108:)

"This appears to be a settled rule, laid down both in the ancient and modern books; but the petitioners have paid no attention to this rule, for there is no offer to perform any part of the decree, or even to bring the money into court, or any pretext of poverty, want of assets, or other inability to do it. There is wisdom in the establishment of such a provision, and it ought to be duly enforced. Its object is to prevent abuse in the administration of justice, by filing of bills of review for delay and vexation, or otherwise protracting the litigation, to the discouragement and distress of the adverse party."

The rule thus sanctioned by the supreme court is neither changed nor modified by what was said and decided in *Davis* v. *Speiden*, 104 U. S. 83–87. In that case the complainant in review had brought himself within the exceptions to the general rule by showing his inability to perform the decree. So far from intending to qualify the rule as laid down in *Ricker* v. *Powell*, the court expressly declares that no bill of review will be admitted unless the party first obeys and performs the decree, and gives bond to satisfy costs and damages of delay, unless in case of poverty, etc. While this rule is administrative, rather than jurisdictional, it is still generally incumbent upon a party to show performance or inability to perform the decree before leave will be granted him to file a bill of review to impeach such decree. In the present case the decree required defendants to transfer stocks, and to pay over to complainant,

Kimberly, considerable sums of money. No performance, or inability to perform the decree, is alleged by defendants. For this reason, this application should be dénied.

The newly-discovered evidence and fraud relied on by defendants as grounds for impeaching such decree are so intimately connected that they may be considered together. It is alleged in the proposed bill of review that Kimberly falsely and fraudulently antedated a certain letter, written, or purported to be written, by himself to defendant Arms, which was introduced in evidence as part of said Kimberly's proof, in rebuttal of the defense that by the contract of March 4, 1880, and the written instrument prepared by Arms on March 5, 1880, reserving to himself the interest in the Grand Central mine, Kimberly could make no claim to said interest. Said letter of Kimberly purported to notify Arms that he would not recognize Arms' right to said interest, but claimed a share thereof himself. This letter, it is charged, was written in July or August, 1881, but was falsely and fraudulently antedated to July 22, 1880, for the purpose, as alleged, of showing the prompt repudiation or disaffirmance of the March, 1880, contract made by Kimberly, or his agent, and embodied in said instrument of March 5, 1880. Kimberly and one Wolfkill testified to the writing and mailing of said letter at or about the time it bore date Wolfkill now makes affidavit, exhibited with the proposed bill of review, that he and Kimberly committed perjury in what they stated in their depositions about said letter having been written in July, 1880; that it was in fact a year later, etc. It is alleged that this false testimony, and fraudulently antedated letter, was material testimony in the case, and greatly influenced and controlled the special master and the court in reaching their conclusions in the case. Defendants claim that they had no means, by the exercise of any diligence on their part, to discover these facts before the final decree, and that they have only recently been disclosed by said witness Wolfkill, etc. As newly-discovered evidence, these facts would hardly be sufficient to sustain a bill of review in this case, when considered in connection with the real issue between the parties, and the ground on which the supreme court rested its opinion and decision. The main controverted question raised by the pleadings was whether the interest in the Grand Central mine or stock was purchased by Arms for the joint account of Kimberly and himself, as a partnership, or for his private individual account. Kimberly claimed that it was understood and agreed between them that said interest should be acquired on joint account, and that it was so acquired. This was denied by Arms. The special master and supreme court found this issue in favor of Kimberly. Neither rested their findings of fact or conclusion of law establishing Kimberly's right in and to said interest upon the alleged false, and fraudulent, and antedated letter. It was in no sense made or considered a controlling fact or circumstance by either the special master or by the supreme court. The 7th, 8th, and 9th findings of the special master established Kimberly's right to the relief he sought; for they found the agreement as claimed by Kimberly,—that said interest was to be, and was, purchased on joint or partnership account, and,

as a result, that Kimberly was entitled to his share thereof, and of the profits or dividends received by Arms therefrom. Turning to the opinion of the supreme court, (*Kimberly* v. *Arms,* 129 U. S. 525, 9 Sup. Ct. Rep. 355,) we see that these findings of the special master are sustained. The court say:

"We are therefore constrained to hold that the learned court below failed to give to the findings of the master the weight to which they were entitled, and that they should have been treated as so far correct and binding as not to be disturbed, unless clearly in conflict with the weight of the evidence upon which they were made. That there was no such conflict is manifest. Upon nearly every important particular relating to the partnership between Arms and Kimberly, and its business, there is hardly any discrepancy in the testimony of the parties. It is only as to the circumstances under which Arms obtained his loan from Fairbank, with which he purchased the shares in the Grand Central Mining Company, that there is any serious dispute; and, as that transaction is viewed as the act of a partner or agent of the firm, or as the act of the individual, without regard to such partnership, the conclusion is reached as to his liability to account for them. If the findings are taken as correct, there not being sufficient evidence to justify a disregard of them, there is an end to the controversy; for, in accordance with them, the firm had an interest in the shares purchased, and the complainant an equitable right to his proportion upon its dissolution. But, independently of the finding, the facts, which are undisputed, or sustained by a great preponderance of evidence, must, we think, lead to the same conclusion."

The opinion then sets out the facts establishing the agreement to purchase on joint account, and, after reviewing the transaction, states that "under these circumstances the purchase must be deemed to have been made in the interest of the partnership." And on pages 528, 529 the court say they attach no importance, as against the conclusions reached, to the instrument of March 5, 1880, in which Arms undertook to reserve said interest to himself, as his absolute property, and to which the alleged false and fraudulently antedated letter related. It cannot, therefore, be properly urged that the newly-discovered evidence, even assuming it to be of a satisfactory character, relating to the antedating of said letter, is of such a material, important, and controlling character as to justify either this or the supreme court in granting Arms and wife leave to file a bill of review to open the decree in the case.

The remaining ground on which the defendants rest their application is the alleged fraud on the part of Kimberly in concocting and antedating the letter bearing date July 22, 1880, and the false testimony given by himself and his witness Wolfkill in relation thereto, which it is claimed greatly influenced the special master and the supreme court in reaching a conclusion adverse to defendants. The courts have not, and cannot, accurately define the acts done, or facts concealed, which will constitute such fraud as will vitiate or invalidate judgments and decrees. It may, however, be stated generally that where a successful party has by meditated and intentional contrivance kept the opposing side and the court in ignorance of material and controlling facts, whereby he has secured an unjust advantage, or a decree adverse to the real merits of the controversy, a court of equity will entertain a bill to impeach and annul such

decree. This is substantially the rule laid down in the well-considered case of *Patch* v. *Ward*, L. R. 3 Ch. 203. But it is settled that the court will not set aside a judgment because it was founded on a fraudu-lent instrument or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. *Vance* v. *Burbank*, 101 U. S. 519; *U. S.* v. *Throckmorton*, 98 U. S. 66. In the latter case the act of fraud relied on to support the bill was the false and fraudulent antedating of the grant, so as to impose on the court the belief that it was made at a time when the party or official executing the same had power to make it, and the supporting of such simulated and false document by perjured witnesses. Page 62. But there were other controlling facts and circumstances in the case, and the supreme court affirmed the decree of the circuit court sustaining a demurrer to the bill and dismissing it on the merits. The case, in its general aspects, cannot be distinguished in principle from that under consideration. The bill of review now sought to be filed, if read in the light of the facts found by the special master and the supreme court, and the conclusions drawn therefrom in favor of Kimberly's right to share in the Grand Central purchase, is insufficient to impeach the decree, because it very clearly appears that the alleged fraudulent letter, and perjured evidence in connection therewith, were not controlling facts in inducing or leading the court to the conclusions reached on the merits. Again, it is settled that in order to obtain equitable relief against a judgment alleged to have been fraudulently obtained, it must be averred and shown that there is a valid defense on the merits. *White* v. *Crow*, 110 U. S. 184, 4 Sup. Ct. Rep. 71. In view of the 7th, 8th, and 9th findings of the special master, which the supreme court, in its opinion, sustain as manifestly correct from the evidence, the defendants have not and cannot show that they have any valid defense on the merits. The antedated letter, and false testimony in relation thereto, if true, would fall short of showing a valid defense on the merits. While a bill of review based solely on fraud in obtaining the decree complained of may be filed without the leave of the court which rendered such decree, because such a bill is regarded as an original bill, in the nature only of a bill of review, still, where that ground of relief is united in the same bill with others, which require the previous leave of the court, the bill cannot be separated into parts, and leave be granted as to part and refused as to other parts. The application is for leave to file the bill as a whole, and it must be acted upon as a whole, and not in parts. The supreme court take this view of such applications. Thus, in *Ricker* v. *Powell*, 100 U. S. 109, it is said:

"The application was for leave to file the bill as a whole, and not in parts; and if, as a whole, it required leave, the part which, if it stood alone, could be put on file without, must stand or fall with the incumbrances that have been attached to it."

In the present case the application is for leave to file the bill of review as a whole, and, as the part based upon fraud, even if such fraud were sufficient, standing alone, to be filed without leave, cannot be separated from the other branches, which require the previous leave of the court,

it must stand or fall with the other grounds to which it is attached. It may be doubted whether it is in consonance with proper practice thus to join or unite in one bill several different and distinct grounds of review, which invoke different relief under each branch, and separate defenses to the several parts of the bill. The object and effect of that branch of the bill resting on fraud is to vacate the decree *in toto*, not to retry the case; and the fraud should be of such character as to warrant that relief. The object and effect of a bill of review for error of law apparent upon the face of the record is to reverse the decree so far as erroneous, and to retry the cause upon the original record, while the purpose and effect of a bill of review based upon newly-discovered evidence is to suspend the decree, and retry the cause upon the original and new proof. *Moore* v. *Moore*, 2 Ves. Sr. 596; *Catterall* v. *Purchase*, 1 Atk. 290; *Cook* v. *Bamfield*, 3 Swanst. Ch. 607. To unite these three grounds of review and relief in one and the same bill must lead to great confusion, and render the bill multifarious. *Perry* v. *Phelips*, 17 Ves. 183; *Campbell* v. *Mackay*, 1 Mylne & C. 618; *Attorney General* v. *College*, 7 Sim. 254. Upon the whole case, as presented by the record and by the proposed bill of review, the court is clearly of the opinion that the defendant's application for leave to file said bill of review should not be granted, and it is accordingly denied, with costs.