**MATHESON et al. v. NATIONAL SURETY CO. et al.**

No. 7233.

Circuit Court of Appeals, Ninth Circuit.
March 23, 1934.

James Wickersham and G. W. Nostrand, both of Juneau, Alaska, for appellants.

Hellenthal & Hellenthal, of Juneau, Alaska, and R. P. Wisecarver, of San Francisco, Cal., for appellee National Surety Co.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

This is an appeal from an order entered July 3, 1933, in the District Court for the Territory of Alaska, First Division, sustaining appellees' demurrer to appellants' petition, dismissing said petition, and denying appellants' motion. The purpose of the motion and of the petition was to set aside an order theretofore made in the matter of the estate of F. Matheson, deceased, settling the account of the administratrix. The matter of the settlement of this account was before this court in Matheson v. National Surety Co., 41 F.(2d) 155, and the opinion and order in that case is made a part of the petition which was dismissed by the District Court. In stating the facts we will refer to our previous opinion as well as to the facts stated in the transcript and petition.

It appears from our opinion reported in 41 F.(2d) 155, 156, that the account of the administratrix had been settled by the commissioner of probate, that an appeal was taken from this order to the District Court and from the order of the District Court to this court. The items involved aggregated $8,929.15 for the maintenance and support of the administratrix who was a widow of the deceased, and the minor children of the administratrix and her deceased husband. This court, on the appeal, held that the District Court should have required additional evidence in support of the items of expenditure for family support claimed in the account, and that the court erred in assuming that the verified account itself prima facie established that the items were correct. In that regard this court said:

"* * * We think the court erred in overruling the objections and not requiring the administratrix, or the surety in her behalf, to show by competent evidence that the amounts for which she claims credits, as having been paid out for the support of the minor children, were in fact so paid or furnished. The children had to be supported, and it is immaterial whether the administratrix furnished the requisite support by means of money or in the form of needed merchandise from the store; but, whether money or merchandise, it must be shown to have been supplied for the reasonable necessities of the children, exclusive of other persons. A prima facie case is not made out by the administratrix's report; it must be supported by competent proofs. What are competent proofs we do not discuss, for all we are deciding here is that her report or account returned to the court does not in itself make a prima facie case or shift the burden of proof to the heirs. The claimed credits must be established by proofs which under all the circumstances are competent within the general rules of evidence. * * *

"That there may be no misunderstanding, we expressly state that the case is opened

only as to the claimed items of credit for the support of the children. If upon competent evidence it is found that the items are, in full, just credits, the decree should be substantially the same as that herein appealed from, except that, unless otherwise paid to the guardian, the costs of this appeal as taxed in his favor should go in reduction of the amount directed by the present decree to be paid to the surety company. And, if such credits are not fully established, judgment should go against the administratrix and the surety in favor of the children for their proportionate share of the deficit. And it is also directed that no other allowance than that now provided shall be made to the administratix or in her behalf on account of attorney's fees or other expenses incident to further proceedings."

On receipt of the mandate of this court, the deposition of the widow and administratrix was taken in Bellingham, Wash., and the deposition of Irene Coulter, residing in Wrangell, Alaska, was also taken. These depositions are attached to and made a part of the petition now under consideration. It appears from the deposition of the administratrix that, after her husband's death, the family groceries were supplied from the store belonging to the estate of the deceased operated by her as administratrix; that she had no independent memory as to the correctness of the items in her account, but that these accounts had been prepared by her attorney from data furnished by her to him, and to the best of her knowledge and belief the accounts correctly disclosed the value of goods and supplies furnished to her for the support of her family from the store. She had summarized her own testimony by the following statement in her deposition: "Do not wish to be understood as denying the contents of the reports, but on account of the years that have gone by, have forgotten and find it impossible to give details. Remember generally about the affairs of the estate, but the details and the signing of reports do not recall. Everything was left to the attorneys to work out and I, accepting their representations, most probably signed whatever instruments were presented by them at their request."

The witness Irene Coulter testified that she was employed as bookkeeper at the store; that the source of supplies for the family was the store operated by the administratrix; that accounts were regularly kept of what was taken out of the store by the administratrix; that a monthly duplicate statement was kept on file; and that the monthly balances were posted in the ledger; but that she did not know the whereabouts of the monthly sheets which were in the store when she left.

It appears from the deposition that the widow married William Patterson who was working in the store and who thereafter managed the store. The administratrix testified that moneys used by her husband in his own support or supplies furnished to him were not charged in her accounts. She was asked, and answered, the following question:

"Is it not true that in making your accounts for the support of the family in each and every account rendered by you to the probate court you assumed the family so supported to consist of the children, yourself, your husband and such company as came to your house?

"No, it is not true. I have heretofore explained as to how my husband maintained himself and myself; however, I recall that on two occasions I asked for further allowance for dental work for the children and it was allowed me."

In this litigation the children and their guardian, appellants herein, had been represented by James Wickersham, who, having been elected as a delegate to Congress, arranged with Herbert L. Faulkner to act as attorney in the matter. As the appellants rely very largely upon an alleged breach of duty by this attorney, we quote the allegation in the petition in regard to the employment of Faulkner: " * * * That after the filing of the mandate in said cause in the district court at Juneau, Alaska, the said Wickersham as the attorney for the heirs and their guardian, and with their consent, engaged Herbert L. Faulkner, Esq., an attorney of long experience in the practice of his profession in Juneau, to care for and protect the interests of the said heirs and guardian in said cause in the absence of said Wickersham from Alaska; to retry the case so stated in the opinion of the appellate court under the instructions contained in the said opinion and order of reversal and mandate of said court, when it should be regularly set for trial in the district court in Juneau, and delivered all the papers, files and records in his possession to the said attorney, including a copy of the opinion and order of reversal and instructions to the district court in Alaska; that said attorney accepted the said files, records and opinion and promised to faithfully protect and care for the best interests of said heirs and their guardian if and when the said cause should come on for trial in the absence of said Wickersham from Juneau."

It is alleged that Herbert L. Faulkner as

such an attorney entered into a stipulation with relation to the disposition of the case. That stipulation by reference is made a part of the petition. We quote therefrom as follows: "It is hereby stipulated and agreed * * that upon the introduction of the testimony consisting of the depositions of Mabel Matheson Patterson, administratrix and Irene Coulter, and upon the National Surety Company agreeing to relinquish its claim against the estate and agreeing to pay two hundred fifty dollars ($250.00), the order heretofore made in the above entitled matter, dated the 14th day of August, 1929, may be affirmed in its entirety, except as to the waiver of the claim of the National Surety Company and the payment to be made by it; and the National Surety Company does hereby waive its claim against the estate and agrees to pay to John G. Grant two hundred fifty dollars ($250.00); and it is agreed by the parties that upon said payment the National Surety Company shall be relieved and released from all obligation on its bond."

The stipulation is dated July 7, 1931. The depositions referred to had been filed in court December 18, 1930. The petition alleges that "a form of final judgment in said cause was prepared and approved in writing by said three attorneys." The trial judge, upon the introduction and presentation of the stipulation on July 8, 1931, settled the accounts of the administratrix, and found that the sum of $8,929.15 "was spent for the maintenance of the widow and the minor children; that said amounts are properly shown in said report, and that the objections of the National Surety Company to said items on the ground that they were advancements should be overruled."

The court also found in accordance with his previous order approved by this court that the administratrix advanced the guardian $11,617.97, and because of this advancement, and because of the fact that there was no money remaining in the hands of the administratrix to pay some of the claims owing by the estate (Seattle Hardware Company, $768.65, Pac. Net & Twine Company, $180.-40, attorney's fees, $500, docket fees, $18.50, total, $1,467.55), directed that the administratrix demand of the guardian and his sureties sufficient to pay the foregoing claims and costs of closing the estate, and, in the event of the refusal of the guardian to pay the same, directed the sale of real estate which belonged to the estate to pay the same. The order directed that the case be remanded to the commissioner for proceedings in accordance therewith, and that, upon filing the sup-

plemental report after payment of the claim, the administratrix be discharged and that her sureties be released from all obligation. The petition alleges that the purpose of the attorneys by their stipulation was to confer jurisdiction upon the District Court in Juneau "to make and enter a final judgment in said cause in violation of the rules of law and the specific instructions contained in the opinion and order of reversal so made and entered in said appellate court in its opinion and order of May 26, 1930; that on the 8th day of July, 1931, the said written stipulation and said approved form of final judgment were presented by said attorneys to Hon. Justin W. Harding, judge of the district court then sitting in court at Juneau, Alaska; that at the same time and place the attorneys for the National Surety Company presented to said judge the written depositions of Mabel Matheson, administratrix of said estate of F. Matheson, deceased, and Irene Coulter, a witness, and said attorneys then and there requested said district judge to sign the form of final judgment they had so prepared and in writing, and upon such proceedings as were taken in said court at that time, and upon the evidence contained in said stipulation and said two depositions, and none other, the judge of said district court then and there adopted said form of judgment so prepared and approved in writing by said three attorneys and signed the same as the final judgment in said cause and caused it to be entered in the records of said court and a copy thereof to be transmitted to the probate judge in Wrangell precinct. * * *

"That upon the trial before Hon. Justin W. Harding, judge of the district court on July 8, 1931, in said cause, the only evidence offered or received by said court in support of the said judgment so signed and entered in said cause, were the depositions in writing of Mabel Matheson and Irene Coulter, and said written stipulation, so signed by said three attorneys; no witness was sworn in said trial nor was there any oral or other testimony of any kind taken to establish the credits claimed in the final account of Mabel Matheson, as administratrix of said estate of F. Matheson, deceased; that no application was made to the Circuit Court of Appeals, 9th Circuit, in the cause then pending at any time after the coming down of the mandate on Dec. 27, 1930, by petition or otherwise, by any of the parties to said cause in said appellate court, in the nature of a bill of review, or in any other manner, to obtain leave of that court to modify, change or to revoke the opinion of that court, or any part

thereof, and the acts of the said attorneys in signing said stipulation of July 7, 1931, and securing the district court to sign, approve and enter said final judgment in the district court on July 8, 1931, were without the knowledge or consent of said Circuit Court of Appeals, 9th Circuit, were wholly unauthorized, in violation of law, beyond the jurisdiction of said district court, and in contempt of the power and authority of said Circuit Court of Appeals; and all of the said proceedings leading to the making, signing and entering of the said judgment of the said district court on July 8, 1931, were illegal and void."

Notice of the hearing of this petition was served upon the attorneys for the National Surety Company and upon the attorney for Mabel Matheson. The petitioner prayed the court "to vacate, set aside and annul its order and judgment made and entered in this cause on the 8th day of July, 1931 and strike said order and judgment from the files and records in this cause; strike from the files and records in this cause that certain pretended stipulation * * * strike from the files and records in this cause the depositions of Mabel Matheson and Irene Coulter; * * * withdraw that copy of the order and decree of July 8, 1931 forwarded to the commissioner and ex-officio Probate Judge in and for the Wrangell precinct * * * and to take such proceedings in this court and cause as are necessary to retry and render judgment in the Matheson estate agreeable to the rulings and instructions of the Circuit Court of Appeals, 9th Circuit, contained in the opinion and order of reversal of May 26, 1930 and the mandate of the appellate court filed in this court on December 27, 1930, in this cause on appeal to that court, to assess the costs of this proceeding against the respondents, including $500 attorney fees, and to give these petitioners such other and further relief. * * * "

■ A demurrer was interposed to this petition and sustained, and the petition dismissed. A motion to like effect was made and denied. In so far as this petition and the corresponding motion invoke the power of the District Court to grant a new trial, the application was too late, and there is no appeal allowed by law from the order denying the motion or application for a new trial. Sections 1057–1062, ch. 22, Code of Civil Procedure, Comp. Laws of Alaska, 1913, pp. 443–445; chapter 14, Sess. L. 1923. The appellants, however, insist that the petition filed by them should be treated as an independent action in equity. The fraud in its instance is the alleged unauthorized action of the attorney for the appellants in submitting the final accounts of the administratrix to the court for determination.

■■ An analysis of the allegations of the petition in regard to the fraud shows that the allegation of fraud is largely predicated upon the theory that the attorney acted in violation of the mandate of this court and stipulated to the form of the judgment to be rendered therein. The question of whether or not the attorneys and the court acted in pursuance of the mandate of this court in the proceedings which followed the receipt of the mandate is not a matter properly cognizable in an independent suit in equity based upon the ground that the judgment was procured by fraud. It is only fair to Mr. Faulkner, who acted on behalf of the appellants, to say that we see no impropriety in his conduct and no allegations to justify the conclusion that he acted in excess of his authority as attorney for the appellants. Assuming, however, that the allegations of the bill are sufficient in that regard, an equally fundamental objection to the sufficiency of the petition arises from the absence of any allegation therein with reference to the merits of the controversy.

■ It is essential to an original bill in the nature of a bill of review to a judgment or decree on the ground that it was obtained by fraud that it be alleged that the merits of the matter lie with the complainant. The rule in that regard is thus stated in 30 L. R. A. 786, 787, note, as follows:

"Equity jurisdiction. The rule is, that an injunction will not be granted unless the judgment was against conscience because the injured party had a just defense of which he could not avail himself at law, or had a legal defense of which he was ignorant, or was prevented from making by fraud, accident, mistake, or surprise, and that the failure to defend was unmixed with negligence of himself or his agent.

"This rule seems universal and has been reiterated substantially in the above form, or conversely in an affirmative form."

We refer to, but do not cite, the cases in the foregoing note because they are so numerous.

In Beach's Modern Equity Practice, vol. 2, § 884, dealing with the subject of an original bill in the nature of a bill of review to set aside a decree which has been obtained by fraud, it is said: "In order to justify the court of equity in annulling a decree on the ground of fraud, it must be made clearly to appear that the decree has no other founda-

tion than the fraud charged, and that if there had been no fraud there would have been no decree."

The author cites Kimberly v. Arms (C. C.) 40 F. 548, in support of the proposition that the bill must show a meritorious defense. In Pickford v. Talbott, 225 U. S. 651, 32 S. Ct. 687, 689, 56 L. Ed. 1240, the Supreme Court had under consideration an equitable action to obtain an injunction restraining enforcement of the judgment. The court said:

"The principles upon which the decision of the case must turn are entirely familiar. In order to warrant the interposition of a court of equity to restrain the enforcement of a judgment at law, it is, of course, not sufficient for the defeated party to show that because of some newly discovered evidence pertaining to an issue in the case, or because of some newly discovered fact that might have been put in issue, he would probably have a better prospect of success on a retrial of the action. He must show something to render it manifestly unconscionable for his successful adversary to enforce the judgment.

"As Chief Justice Marshall said: 'Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery.' Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 336, 3 L. Ed. 362, 363. Or, as Mr. Justice Curtis expressed it, in Hendrickson v. Hinckley, 17 How. 443, 445, 15 L. Ed. 123, 124: 'A court of equity does not interfere with judgments at law unless the complainant has an equitable defense, of which he could not avail himself at law, because it did not amount to a legal defense, or had a good defense at law, which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents.'

"One who seeks relief in equity against a judgment at law on the ground that through accident or mistake alone, unmixed with fraud, he has lost the benefit of a defense that would have been available in the court of law, must show entire freedom from fault or neglect on the part of himself and his agents, and

must also make it manifest that the judgment against him is wrong on the merits, that he ought in justice to prevail, and that upon a retrial, with the aid of the newly discovered matter of fact or of evidence, it is reasonably certain that he will prevail."

The same rule was stated by the Circuit Court of Appeals of the Eighth Circuit in David A. Manville & Co. v. Francis Oil & Refining Co., 20 F.(2d) 473, 474, citing 34 Corpus Jur. p. 442, to the following effect: "A court of equity will not interfere with the enforcement of a judgment recovered at law, unless it is unjust and unconscionable; and therefore such relief will not be granted unless complainant shows that he has a good and meritorious defense to the action." See, also, White v. Crow et al., 110 U. S. 183, 4 S. Ct. 71, 28 L. Ed. 113.

The rule is equally applicable to the granting of a motion such as that interposed by appellants. The rule is stated in section 280, Freeman on Judgments (5th Ed.), which follows: "Showing Merits—Necessity.—Ordinarily the object attained by the granting of motions or other applications to vacate judgments is that of allowing a full investigation of the matters in controversy, in order that a disposition of the case, according to the merits, may be made. It is therefore frequently laid down as a general rule governing such applications, that they must be supported by a proper showing of merits. Since the ground prescribed by statute and the proceedings based thereon are ordinarily equitable in their nature, these statutes are to be employed only in furtherance of justice, and never for the purpose of enabling a party to raise some technical objection. Even where the statute does not so expressly direct, ordinarily no judgment will be opened unless it is shown to be unjust. 'Every consideration of expediency and justice is opposed to the opening up cases in which judgment by default has been entered, unless it be made to appear prima facie that the judgment as it stands is unjust.' But while these statements are undoubtedly true in a general sense, they are not to be taken absolutely or without qualification, since they are intended to apply only in cases involving an exercise of a discretionary power and not to cases where relief is a matter of right. However, notwithstanding some exceptions, relief is usually discretionary, so it may be stated generally that in proceedings based upon grounds not going to the validity of the judgment, merits must be shown. The court has no authority to waive this requirement, though an affidavit is

not absolutely jurisdictional, since merits may otherwise appear. Ordinarily it is the defendant who seeks relief, but the general principle is equally applicable to a plaintiff who must show a meritorious cause of action."

In Christy v. A., T. & S. F. Ry. Co. (D. C.) 214 F. 1016, 1019, an action in equity was brought to set aside a judgment on the ground that it was based on a stipulation of the attorney for the petitioner, and the attorney had no authority to enter into the stipulation upon which the judgment was based. In view of the fact that this case is very similar to the case at bar, in that the petition is predicated upon the alleged unauthorized act of the attorney, we quote more extensively therefrom than we otherwise would, for the observations of the court are applicable with equal force to the facts in the case at bar, with this exception: In the case at bar there is no attempt whatever to state that the items allowed by the court should have been disallowed by the court or that the decree of the court was erroneous other than the contention that the trial court had not regularly pursued its obligation under the mandate from this court. The court said:

"The amended bill alleges that when the law action was called for trial it was submitted on the stipulation alone, that no other testimony was offered and that the attorneys for the respective parties advised the court that under the stipulation, judgment should go for plaintiff in that action in the sum of $15,-437.05, which was accordingly entered. That the facts admitted in the stipulation in the law action were in contradiction of the averments and denials in the answer in that action; that plaintiffs have stated to their solicitor in this suit what they believe to be the evidence that will be produced in support of the answer in the law action as well as what. they believe will be the plaintiffs' evidence in said action, and are advised that they had a good and meritorious defense in said former action; that they offer to prove that the attorneys for the defendant in the law action had no authority to enter into said stipulation; that in fact they were not authorized by the defendants in the law action to enter into any stipulation nor to admit or agree to any of the facts therein stated. * * *

"The prayer is that the stipulation be set aside and the judgment in the law action be vacated, and that the present commissioners of the county be substituted in the law action as defendants instead of those who were commissioners when that action was brought.

"The defendant moves to dismiss the bill on the ground that it does not show that the plaintiffs are entitled to any equitable relief.

"It is a generally recognized principle that a court of equity has jurisdiction to vacate and set aside a judgment in an action at law obtained through fraud, accident or mistake. The defendant in the law action, when he comes into equity for that purpose must, however, show on the face of his bill that he had a good defense on the merits to the law action which he was prevented in availing himself of by fraud, accident, or mistake, unmixed with negligence of himself or his agents and that he was not guilty of laches. Knox County v. Harshman, 133 U. S. 152, 154, 10 S. Ct. 257, 33 L. Ed. 586; White v. Crow, 110 U. S. 183, 187, 4 S. Ct. 71, 28 L. Ed. 113; Life Ass'n v. Lohmiller, 74 F. 23, 20 C. C. A. 274; Town of Andes v. Millard (C. C.) 70 F. 515; Phillips v. Negley, 117 U. S. 665, 675, 6 S. Ct. 901, 29 L. Ed. 1013; Village of Celina v. Bank, 68 F. 401, 15 C. C. A. 495; Young v. Sigler (C. C.) 48 F. 182; Denton v. Baker, 93 F. 46, 35 C. C. A. 187; Kimberly v. Arms (C. C.) 40 F. 548, 558; Marshall v. Holmes, 141 U. S. 589, 596, 12 S. Ct. 62, 35 L. Ed. 870.

"The foregoing authorities amply sustain the principle announced, and we turn again to the amended bill. It does not allege or even intimate that either fraud or collusion was practiced in entering into the stipulation, nor does it allege that any mistake or accident, in the sense required was made or fallen into by both or either of the parties or their counsel. Indeed, counsel for complainant did not claim any of these grounds for equitable relief in argument on the motion. Neither does the bill allege facts which show that the defendants in the law action had a good defense in that case on the merits. It is true that it is alleged that complainants here do not believe that the plaintiff in the law action would have been able to sustain its complaint, that complainants have told counsel the facts that they believe they could prove in defense in the law action and that he advises that they have a good defense to that action, and that they are able to bring evidence to establish the facts set up in the answer in that case; but this is far from showing on the face of the bill facts from which the court can conclude, if the facts thus alleged be established, that the defendants in the law action had a good defense on the merits in that case. The bill instead of setting out facts which would show that the defendants had a good and meritorious defense to the law action has plead only the belief and conclusions of the complainants and their counsel."

The appeal from that part of the order denying the motion is dismissed and that part of the order dismissing the petition is affirmed.