## PICKFORD *v.* TALBOTT.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF
COLUMBIA.

No. 512. Argued April 29, 1912.—Decided June 7, 1912.

In order to warrant a court of equity in restraining the enforcement
of a judgment at law, the defeated party must show that it is mani-
festly unconscionable for the judgment creditor to enforce it; it is
not sufficient for him merely to show that because of newly discov-
ered facts or evidence he would have a better prospect of success on
a retrial.

It is incumbent on one seeking to have the enforcement of a judgment
against him enjoined by a court of equity on the ground of newly
discovered evidence to show that his failure to discover the evidence
relied upon as defense was not attributable to his own want of dili-
gence.

For the purpose of equity restraining the enforcement of a judgment
at law, a defense is not deemed to be newly discovered or to have
been lost by accident or mistake, if it was, or ought to have been,
within the knowledge of the party when he made his defense to the
action at law.

A defendant in a libel suit who deliberately abstained from defending
by justification of the charges, cannot, after verdict and judgment
against him, come into equity and seek to restrain the enforcement
of the judgment on the ground of newly discovered evidence tending
to prove the truth of the charges.

*Quære* whether a defendant in a libel suit who made a public charge
of malfeasance in office without having evidence of truth sufficient
to warrant prudent counsel in making an issue of it, is not barred
from relief in equity under the doctrine of clean hands.

36 App. D. C. 289, affirmed.

THE facts, which involve an attempt to restrain in an
action in equity the enforcement of a judgment obtained
on the law side of the court against complainant in an
action for libel, are stated in the opinion.

*Mr. Henry E. Davis,* with whom *Mr. Samuel Maddox* and *Mr. H. Prescott Gatley* were on the brief, for appellants.

*Mr. John Ridout* for appellee.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was an equity action, brought by the appellants against the appellee and others, in the Supreme Court of the District of Columbia, to obtain an injunction restraining the enforcement of a judgment theretofore recovered by the appellee against the appellants in an action for libel. That action was on the law side of the Supreme Court of the District, and resulted in a verdict and judgment for $8,500 damages, which on review was affirmed by the Court of Appeals (28 App. D. C. 498) and by this court (211 U. S. 199).

The present action was commenced after the final affirmance of the judgment at law. Upon the filing of the bill of complaint herein, with accompanying exhibits, the court made a temporary restraining order. This was continued until the final hearing, and that hearing resulted in a decree granting a perpetual injunction against the enforcement of the judgment. The defendants in the equity action, other than the present appellee, were joined for reasons not now material. He alone appealed from the final decree to the Court of Appeals of the District, which reversed the decree and ordered the cause to be remanded to the court below, with direction to dismiss the bill of complaint (36 App. D. C. 289). From the decree of reversal Pickford and Walter have appealed to this court, thus presenting for our decision the question whether, upon the pleadings and proofs, they are entitled to an injunction restraining the enforcement of Talbott's judgment against them.

The equitable jurisdiction is invoked upon the ground that after the conclusion of the litigation at law the appellants discovered certain evidence which, if known· at the time, might and would have enabled them to make ·a different defense in the court of law, and which it is alleged would assuredly have led to a different result there; it being insisted that the appellants were not at fault in failing to discover the evidence referred to.

· A brief history of the controversy between the parties is essential to an understanding of the questions presented.

In the month of March, 1901, while the appellee, Talbott, was State's attorney for Montgomery County, Maryland, an indictment was returned by the grand jury of that county charging Pickford and Walter, the appellants, and two others named in the indictment, with having unlawfully, wilfully and maliciously set fire to and burned a certain untenanted dwelling house, the property of said Pickford and Walter. A dwelling house owned by them, situate in Montgomery County, had in fact been destroyed by fire in the latter part of the year 1897, and the fire insurance companies, after some demur, had paid to the owners sums aggregating $22,500. It is said to have been the purpose of the indictment to attribute to the defendants named therein an attempt to defraud the insurance companies. Three of those defendants (including Walter, but not Pickford), being arrested in the District of Columbia, where they resided, sued out writs of *habeas corpus* in the District, and were released on the ground that the indictment did not set forth any crime. Pickford surrendered himself in Montgomery County and gave bail to answer the indictment, and his trial was set down for a day in the following November before the Circuit Court. He duly appeared, but Talbott, as State's attorney, asked for a postponement on the ground that he was not ready for trial. The court strongly intimated that there ought to be no postponement, and upon this intimation (and·

perhaps partly because of the question that had been raised about the sufficiency of the indictment) Talbott entered a *nolle prosequi* as to Pickford. Later, he did the same with respect to Walter.

Thereafter, and in the month of December, 1901, Pickford and Walter procured to be published in the columns of a newspaper in Washington an article concerning Talbott which was the ground of his action against them for libel. A copy of the article was included in the declaration in that suit and was attached to and made a part of the bill of complaint herein. Through some inadvertence it was omitted in the printing of the record, but upon the argument we were, by consent of counsel, referred for information as to its contents to the record that was here on the former occasion (211 U. S. 199). The article purported to show "the true inwardness of the criminal scheme that culminated in this nefarious indictment," and declared that "we shall state the facts as we have learned them after a thorough investigation." It charged Talbott, as State's attorney, with participation in an alleged conspiracy to force Pickford and Walter, by means of an unfounded indictment, to repay to the insurance companies the moneys that had been paid by them to Pickford and Walter for the fire loss.

The libel suit was commenced in the year 1902. The final affirmance of the judgment therein was on November 30, 1908. The present action was begun in the following month of January.

The bill of complaint avers that at the time of the filing of the declaration in the libel suit the complainants believed it to be true (the ground of that belief is not distinctly averred) that Talbott had caused the indictment to be procured for the purpose of obtaining from the insurance companies certain large sums of money, and had thus used his public office for his personal gain; that they so informed their counsel before the filing of their pleas,

but were advised by counsel that should they attempt to justify the publication of the article by pleading the truth thereof, and fail to make good such plea by evidence to the satisfaction of the court and jury, the attempt at justification would be held to be a repetition and republication of the libel, and would aggravate the damages to be recovered in the action; that they were, on the other hand, advised by their counsel that if they should plead "not guilty" to the declaration they would probably be excluded from endeavoring to prove the truth of the alleged libel; and that the complainants, being unable, after due diligence, to procure and submit to their counsel evidence which in the opinion of counsel might properly and safely be offered on the trial of the action in justification of the alleged libel and in proof of the truth thereof, were compelled to confine, and did confine, their defense to the general issue, and were thereby deprived of the opportunity to offer evidence tending to prove its truth; but that upon the trial they were permitted to introduce, and did introduce (not in justification of the alleged libel nor to prove the truth thereof, but to show absence of malice on their part and thus to mitigate the damages), sundry matters and things which are set forth at great length in the bill, all of which, it is averred, were known to the complainants at and before the composition and publication of the libel.

So far as appears, the matters thus recited furnished the sole basis for their alleged belief that Talbott had prostituted his office in the manner alleged in the newspaper article. Without repeating them here, it is enough to say that if those matters did in fact constitute their whole case against Talbott, their counsel was probably correct in his judgment that a plea of justification, supported by such evidence alone, would be deemed a republication of the libel and a ground for allowing increased damages against them.

The bill of complaint further avers that before pleading

to the declaration. the appellants and their counsel diligently inquired of every person believed to have any. possible knowledge in the premises, with the view to obtaining and producing testimony tending to support a plea of justification and to prove the truth of the matter alleged as libelous, but without avail.

It also alleges that the like diligent inquiries were continued after the trial of the cause down to the filing of the bill, but wholly without result until the twenty-ninth day. of December, 1908, when, in an accidental meeting between one of the counsel for the appellants and Hon. James B. Henderson, one of the judges of the Circuit Court for Montgomery County, who held that office at the time of the indictment referred to, Judge Henderson informed counsel of a conversation said to have taken place between him and Talbott while the indictment was pending, in which conversation Talbott stated to the judge in substance that he was keeping the indictment alive in order to assist the insurance companies in an effort to recover from Pickford and Walter the moneys that had been paid to them for the fire loss; and that he, Talbott, or his firm, would get a large fee out of the business.

The bill rests the prayer for relief against the judgment at law solely upon the ground that the evidence of Judge Henderson, taken in connection with the other matters and things that were given in evidence on the trial of the libel suit as mentioned, would have caused the jury to render a verdict in favor of the defendants, Pickford and Walter.

· Talbott answered the bill, fully and specifically denying all allegations thereof that attributed improper conduct to him, and expressly denying the alleged conversation between him and Judge Henderson, and denying that he had kept the indictment alive for personal gain, and every other improper inference deducible from the alleged conversation. The answer called upon complainants to make

strict proof of the averments of the bill respecting the conferences between complainants and their counsel and respecting what was done by them about the preparation of their defense in the action at law, and denied that if the truth of the libelous matter had been pleaded and the evidence of Judge Henderson introduced the result of the trial would have been different; averring that if the pleadings had been such as to admit his testimony the door would have been opened for the admission of other evidence unfavorable to the complainants.

After the filing of this answer the complainants, by leave of the court, amended and supplemented their original bill of complaint by the addition of a considerable amount of new matter.  Included in it is an averment that the indictment of Pickford and Walter, as above mentioned, was in fact caused by and through a conspiracy between Talbott and others, with the object of extorting money from the complainants, and that everything done by Talbott in reference to the indictment was done in pursuance of that conspiracy.  To this, by a further answer, Talbott entered an unequivocal denial.

Upon these pleadings, and upon proofs submitted by the respective parties in support thereof, the cause was brought to final hearing, with the result already mentioned.

The principles upon which the decision of the case must turn are entirely familiar.  In order to warrant the interposition of a court of equity to restrain the enforcement of a judgment at law, it is, of course, not sufficient for the defeated party to show that because of some newly discovered evidence pertaining to an issue in the case, or because of some newly discovered fact that might have been put in issue, he would probably have a better prospect of success on a retrial of the action.  He must show something to render it manifestly unconscionable for his successful adversary to enforce the judgment.

As Chief Justice Marshall said: "Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery." *Marine Ins. Co.* v. *Hodgson,* 7 Cranch, 332, 336. Or, as Mr. Justice Curtis expressed it, in *Hendrickson* v. *Hinckley,* 17 How. 443, 445: "A court of equity does not interfere with judgments at law, unless the complainant has an equitable defense, of which he could not avail himself at law, because it did not amount to a legal defense, or had a good defense at law, which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents."

One who seeks relief in equity against a judgment at law on the ground that through accident or mistake alone, unmixed with fraud, he has lost the benefit of a defense that would have been available in the court of law, must show entire freedom from fault or neglect on the part of himself and his agents, and must also make it manifest that the judgment against him is wrong on the merits, that he ought in justice to prevail, and that upon a retrial, with the aid of the newly discovered matter of fact or of evidence, it is reasonably certain that he will prevail. Pom. Eq. Jur. (3d ed.) §§ 1364, 1365, and notes.

The trial court rested its decision adverse to Talbott upon the theory that if it were true that he had misused his office as State's attorney, and, because of spite or for any other selfish or personal reason, had wrongfully procured an unjust indictment against Pickford and Walter,

he ought not, in equity and good conscience, to be permitted to collect damages against them for publishing his misconduct, because he would thereby be taking advantage of his own wrong. The court recognized that this theory was applicable only if the statements made in the libelous article were true; and, accepting Judge Henderson's testimony as conclusive upon that issue, the court held it to be unconscionable for Talbott to enforce his judgment. We find it unnecessary to test the correctness of the theory, because, like the Court of Appeals, we differ with the trial court upon the question of fact. Under the pleadings, the burden was upon the complainants (now appellants) to prove the official misconduct of Talbott, and this they failed to prove.

The Court of Appeals, correctly considering that most of the evidence was wholly irrelevant to the issues, and that substantially the only material evidence in support of the bill was that of Judge Henderson, and reviewing his testimony *in extenso*, came to the conclusion that it not only did not conclusively establish the truth of the matters alleged in the libelous article, but did not render it clear beyond reasonable doubt that it would produce a verdict favorable to the complainants if a new trial of the libel suit should be had. Attention was called to the fact that Judge Henderson testified to a conversation had with Talbott about nine years before, of which he had no memorandum to refresh his memory; that his examination showed his memory to be not entirely reliable; that Talbott expressly denied making the incriminatory statements attributed to him; that it was improbable that a lawyer of his standing, holding the important office of State's attorney, would, without apparent motive, deliberately make an admission to any one, much less to the judge of his circuit, that he was using the powers and opportunities of his office for private gain; and that it was improbable that such an admission, if made under such circumstances,

would go unrebuked at the time. With this view we agree.

All question of fraud in the procurement of the judgment at law is thus eliminated. Indeed, counsel for appellants disavow any reliance upon fraud as a ground of relief. To quote from the brief: "The bill makes no averment whatever as to any fraud on the part of the appellee, plaintiff in the law suit, in procuring the judgment in question; the ground on which relief is prayed is accident, as distinguished from fraud."

Next, we agree with the Court of Appeals that, assuming the newly discovered evidence elicited from Judge Henderson would otherwise be sufficient ground for restraining the enforcement of the judgment, it was incumbent upon the appellants under the pleadings in the present action to prove that their failure to discover evidence of the truth of the libel and plead the same by way of defense in the action at law was not attributable to their own want of diligence. The bill alleges that they made diligent but unsuccessful efforts to discover such evidence, both before and after the filing of their plea. The answer calls for strict proof of this. But the averment is left entirely unsupported by the proofs in the case. Neither Pickford nor Walter nor their counsel in the libel suit gave any evidence tending to show any effort, diligent or otherwise, to discover evidence of the truth of the libel.

We do not hold them negligent merely because of not having sooner discovered that Judge Henderson was available as a witness. He himself testified to the effect that, because of the character of the communication, he was careful not to reveal what was said by Mr. Talbott to him until after the conclusion of the libel suit. But, assuming that what was charged against Mr. Talbott in the newspaper article was true, it is not to be assumed that diligent efforts would have discovered no other evidence of its truth. All of Talbott's dealings with the insurance

companies and with the other persons concerned in his alleged misconduct were within the range of investigation, had diligence been exercised.

Again, one of the peculiar features presented by this case is the following: Appellants, coming into equity for relief on the basis of Judge Henderson's evidence, rely upon it not as newly discovered evidence alone, but as evidence of a newly discovered fact. Merely as evidence it would not have been admissible on the former trial, justification not having been pleaded. It is upon the fact alleged to have been disclosed by Judge Henderson—the fact being Mr. Talbott's alleged misconduct, and not merely his alleged admission of it—that appellants are relying as a newly discovered defense to the action for libel. Now, the settled rule in equity is that a defense is not to be deemed "newly discovered," or as lost by "accident or mistake," if it was or ought to have been within the knowledge of the party when he was called upon for his defense in the action at law. As Lord Hardwicke said, "As to relieving against verdicts, for being contrary to equity, those cases are, where the plaintiff knew the fact of his own knowledge to be otherwise than what the jury find by their verdict, *and the defendant was ignorant of it at the trial.*" *Williams* v. *Lee*, 3 Atk. 223, 224. Chancellor Kent said: "The general rule is, that this court will not relieve against a judgment at law, on the ground of its being contrary to equity, unless the defendant below was ignorant of the fact in question, pending the suit, or it could not have been received as a defense." *Lansing* v. *Eddy*, 1 Johns. Ch. 49, 51. See also *Taylor* v. *Nashville & C. Railroad Co.*, 86 Tennessee, 228, and cases cited.

But how can the appellants be heard to say that when making their defense at law they were ignorant of the truth of the matters charged against Talbott in the newspaper article, when they themselves were the authors of those charges? Not only do the verdict and judgment in

the libel suit legally establish their responsibility for the published accusation, but such responsibility is tacitly admitted in the bill of complaint herein, and there is nothing to throw doubt upon it.

Upon the whole case, therefore, it cannot be said that appellants omitted to plead justification in the libel suit because of any "accident" or "mistake" within the meaning of the equitable rule. That defense was considered by them and their counsel and deliberately and advisedly rejected because (a) it could not be sustained, and (b) a failure to sustain it would probably embarrass them in their defense under the general issue, or rather, would render it probable that in the anticipated event of the plaintiff prevailing over them on the general issue, increased damages would be awarded against them because of the reiteration of the libel in a plea of justification. And if when called upon to make defense in the libel suit they had no sufficient evidence at hand to maintain the truth of the published matter, this must on the present record be attributed to one or the other of two causes. One is, that the published matter was in fact untrue; the other is, that they did not use proper diligence to discover evidence of its truth. Either explanation leaves them without claim to relief in this action.

The question whether appellants, because of having originally made a public accusation of malfeasance in office against the appellee without having evidence of the truth of the accusation sufficient even to warrant prudent counsel in making an issue of it in a libel suit, are barred from relief in equity under the doctrine of "clean hands," it is unnecessary to consider.

It seems to us that the case of the appellants is without merit, and the decree under review will be

*Affirmed.*