## HARRINGTON v. DENNY et al.
### No. 2282.

District Court, W. D. Missouri, W. D.
May 20, 1933.

R. R. Brewster and George L. Edwards, both of Kansas City, Mo., Edward J. White, of St. Louis, Mo., Walter P. Armstrong and J. E. McCadden, both of Memphis, Tenn., and Ryland, Stinson, Mag & Thomson, of Kansas City, Mo., for petitioners.

James A. Reed, John B. Gage, J. M. Johnson, I. N. Watson, James P. Aylward, D. W. Johnson, and Henri L. Warren, all of Kansas City, Mo., for respondent.

OTIS, District Judge.

The defendant Denny has moved to dismiss the bill herein on the ground, among others set out in the motion, that it does not state facts entitling the plaintiff to equitable relief.

The general object sought by the plaintiff is an injunction against the enforcement of a judgment obtained in the case of Wolcott v. Guyton et al. in the Jackson county, Mo., Circuit Court and affirmed by the Supreme Court of Missouri. 57 S.W.(2d) 415.

Prefatory to a more detailed summary of the allegations of the bill, a chronological outline of the long and tortuous history of the Wolcott Case is here set out.

1. The case of Wolcott v. Guyton et al. was commenced in the circuit court in January, 1922, as a proceeding in equity by Wolcott against the defendants in that case (the plaintiff in this case is one of them) to set aside an alleged fraudulent settlement between the parties as to a division of the profits of an alleged joint adventure and for an accounting as to such profits.

2. The circuit court found the issues of joint adventure and fraud in favor of Wolcott and rendered a joint and several judgment against the defendants and in favor of the plaintiff for the amount of $1,352,568.41.

3. The defendants filed a motion for a new trial. The term of the judge trying the case having expired, the motion for a new trial was presented to his successor, who sustained the motion and granted a new trial, stating as grounds for that action that there was no evidence sustaining the findings of joint adventure and fraud.

4. From the order sustaining the motion for a new trial the defendants appealed to the Supreme Court of Missouri. The case was heard by that court en banc in its April, 1929, term.

5. In the October, 1929, term of the Supreme Court, and on December 30, 1929, that court handed down an opinion affirming the action of the circuit court in sustaining a motion for a new trial. This opinion was concurred in by five of the judges of the court. Two of the court's seven judges did not sit in the case.

6. The defendants filed a motion for a rehearing. While that motion was pending, three of the five judges who had concurred in the opinion withdrew their concurrences and the case was by the court, on March 4, 1930, ordered set down for reargument. No formal action was taken on the motion for rehearing at that or any later time.

7. In the April, 1930, term of the Supreme Court the case was reargued. A second opinion was handed down March 3, 1931 [327 Mo. 1030, 40 S.W.(2d) 562], as a result of which it was ordered that the judgment of the circuit court be reversed and the case remanded for the sole purpose of trying out the issue of accounting, the court having found in its opinion that the issues of joint adventure and fraud had rightly been determined by the circuit court in favor of the plaintiff.

8. A motion for rehearing was filed by the defendants and was overruled by the Supreme Court. The case was remanded for trial of the issue of accounting.

9. After the case was remanded and before the second trial of the case (as to the issue of accounting), the defendants, having discovered new evidence believed by them to have an important bearing on the issues of joint adventure and fraud, filed an amended answer pleading such newly discovered evidence and raising certain constitutional questions.

10. The circuit court at the second trial received, but refused to consider, the newly discovered or any evidence bearing on the issues of joint adventure and fraud, refusing to consider such evidence because of the limitation of the order remanding the case, and tried only the issue of accounting, to which it was restricted by the mandate, and found for the plaintiff on that issue in a joint and several judgment against defendants in the amount of $1,236,488.48.

11. The defendants filed a motion for a new trial, which was overruled, and from that order they appealed to the Supreme Court. On this appeal the defendants urged the newly discovered evidence on the Supreme Court, and that that court reconsider its earlier findings in favor of the plaintiff on the issues of joint adventure and fraud.

12. On December 16, 1932, the Supreme Court handed down its opinion affirming the judgment of the circuit court (having modified the amount) in the amount of $1,185,088.-57 [57 S.W.(2d) 415]. The Supreme Court in this opinion ruled that it was without power to reconsider the case on its merits as to the issues of joint adventure and fraud or to consider the newly discovered evidence.

The amended bill sets out all of the facts summarized in the foregoing and contains other allegations designed to bring this proceeding within certain of the states of facts under which equity will enjoin the enforcement of a judgment. Such further allegations will be indicated hereinafter so far as may be necessary.

### Introductory.

That there should some time be an end to litigation has been said so often and for so long a time that it ought to be unnecessary once more to say it. Over and over again have the greatest judges, speaking for the highest courts, given utterance to such sentiments as: "Suits should not be immortal while man is mortal;" "The mischief of endless litigation is more to be dreaded than an occasional miscarriage of justice;" "Interest rei publicæ ut sit finis litium." I cannot be unconscious of these maxims as I take up for consideration the several questions raised by the motion to dismiss. They are most pertinent to a case which, when this bill was filed, already had become a cause célèbre by reason of its longevity.

With the development of the law and the invention of new means for preventing miscarriages of justice, such as motions for new trials, motions for rehearings, appeals, writs of certiorari, there is less and less cause for the interference of courts of equity with judgments regularly obtained either in courts of law or in other courts of equity. Admittedly, however, there may still be justification for such an interference. The grounds for it never have been more concisely stated than they were by the great Chief Justice in Marine Insurance Company v. Hodgson, 7 Cranch, 332, 336, 3 L. Ed. 362. He said: "Without attempting to draw any precise line to which Courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a Court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a Court of Chancery." What was there said by Chief Justice Marshall, while more particularly referring to judgments at law, equally is applicable to judgments in equity. Whether any bill in equity, and whether the bill here, states a cause of action is to be determined by applying to it the measuring rod given us by Marshall.

Plaintiff by his learned counsel says that his bill states facts showing that it would be against conscience to execute the judgment obtained by the defendants: First, because that judgment is void; and, second, because it was obtained by fraud and accident unmixed with any fault or negligence of himself.

### Is the Judgment Void Because the Motion for a Rehearing was Not Formally Overruled?

1. The judgment is void, it is urged, for that the Supreme Court of Missouri had no power to render its second judgment upon which depended all subsequent proceedings. It had no power to render its second judgment, so it is said, because nothing was then before it but a motion for a rehearing which had not been passed on, was never passed on, and therefore still is pending undisposed of.

The Supreme Court of Missouri, sitting en banc, consists of seven judges. Only a majority, that is, at least four judges, concurring, can decide a case or sustain or overrule a motion for a rehearing after a case has been decided and a judgment entered or make any

court order whatsoever. So much is beyond controversy.

Now in this case five judges concurred originally in the first opinion. After the opinion was filed a judgment was entered. There was then a motion for a rehearing. Thereafter three of the concurring judges withdrew their concurrences. Thereupon *the court* (not the three judges who had withdrawn their concurrences, but *the court*) ordered a reargument of the case. It will be noted that the court did not order an argument on the motion for a rehearing but did order a reargument of the case.

Either the court had the power to order a reargument or it did not have that power. If it had that power, then it had the power to decide the case after the second argument and to enter a valid judgment.

Certainly the Supreme Court of Missouri has the inherent right (it is an essential part of the judicial power vested in it by the Constitution of the state) to decide what its procedure shall be to the extent that that procedure is not prescribed in the Constitution or in some statute enacted by the Legislature pursuant to constitutional authority. The Supreme Court is the final judge as to whether, when a motion for a rehearing is pending, it can order a reargument of the case without first formally sustaining the motion for a rehearing. There is nothing in the Constitution or statutes of Missouri which in any way limits the power of the Supreme Court in this regard.

The Supreme Court has said in the clearest and most positive language that it is not only proper procedure to order a reargument without first formally sustaining a motion for a rehearing, but it has said that that procedure is not unusual. It so said in this very case when it was last before the Supreme Court and when, apparently for the first time, objection to its power on this ground was raised. The court said [Denny v. Guyton et al. (Mo. Sup.) 57 S.W.(2d) 415, 417]: "It is first claimed by defendants that this court had no authority to vacate the first opinion which affirmed the order of the trial court after the first trial granting a new trial. A motion for rehearing filed here was not overruled; the minutes of this court recite that a reargument was ordered because three of the judges concurring in the first opinion withdrew their concurrences. The argument now seems to imply that the proceeding was something unusual in the disposition of cases in this court. When the first opinion affirming the original judgment was handed down the minutes show,

one judge was absent, one judge did not sit, leaving only five judges, including the writer of that opinion, concurring. The motion for rehearing filed by plaintiff apparently convinced three of the judges that the first opinion was wrong. But the three judges, a minority, could not sustain the motion for rehearing, and the two judges concurring in the original opinion could not overrule it. The three judges who had come to believe the first opinion was erroneous were entirely within their rights in withdrawing their concurrences. That left the case open and under submission. It did not render this court impotent to act nor leave the case perpetually hung up pending a motion for rehearing which could not be acted upon. That justice might be done, a reargument was ordered. There is nothing unusual in the procedure."

Here is the last word of the Supreme Court of Missouri as to its power to order a reargument while a motion for a rehearing is pending and formally undisposed of. It is the decision of that court that such a course is permissible. It is in effect the decision of the Supreme Court that a reargument of a case is a rehearing. Indeed, the Supreme Court itself denominated the reargument a "second hearing." The first sentence of the opinion handed down after the reargument [see 327 Mo. 1030, 1042, 40 S.W.(2d) 562, 564] is: "This case comes to the writer by reassignment after a second hearing by the court in banc."

The language used by the Supreme Court does not in my view quite correctly state the grounds for the conclusion reached, but the grounds which would have supported the conclusion were present in the case and might just as well have been stated in the opinion. It was not quite accurate to say that the fact that three judges had withdrawn their concurrences "left the case open and under submission." Strictly speaking perhaps a judgment of the court could not be affected by the action of three judges. Three judges could not order a judgment of the court and three judges could not set aside or suspend a judgment already entered. It was not the withdrawal of the concurrences of the three judges which "left the case open and under submission." What accomplished that result was the order of the court that the case should be reargued. Necessarily implied in such an order was the reopening of the case and its resubmission.

Learned counsel for the plaintiff earnestly contend that the Supreme Court of Missouri has decided that a reargument of a case can-

not be ordered while a motion for a rehearing is undisposed of. If that were true, still the latest decision of the court would be controlling here. But I think it is not true that the Supreme Court of Missouri ever has decided that a reargument cannot be ordered while a motion for a rehearing is pending and that such a reargument is not in effect a rehearing. The case primarily relied on by the plaintiff is Granite, etc., Co. v. Park View Realty & Improvement Co. et al., 270 Mo. 698, 196 S. W. 1142. It is not in point. No more is held in that case than that where an appellate -court hears an argument on a motion for a rehearing it cannot on that argument enter a new and different judgment in the case, but can pass only on the question which has been argued, that is, whether there shall be a rehearing. That is sound reasoning, but certainly it has no application where what has been ordered by the court is not an argument on a motion for rehearing, but a reargument of the case itself.

A very fine and I think nonexistent distinction is drawn when it is contended, as plaintiff contends here, that an order granting a reargument is one thing and an order granting a rehearing is another thing. After all, what is a rehearing? In an appellate court it is nothing more than a reargument. It was so ruled by the Supreme Court of Missouri in just those words in Granite, etc., Co. v. Park View Realty & Improvement Co. et al., supra. In that case it was said (270 Mo. loc. cit. 700, 196 S. W. 1142, 1143) that "the term 'rehearing' indicates, i. e., that the case is for reargument and resubmission." If that is true, then it is also true that when in this case the Supreme Court ordered a reargument it did order a rehearing.

■ There is another and a quite sufficient ground for the refusal of a court of equity to enjoin the judgment here on the ground now under consideration. The question raised (whether the Supreme Court of Missouri had the power to enter its second judgment) is res adjudicata. That very question was presented to that court and by that court decided. It is not now to be considered whether the question was rightly or wrongly decided. It was decided. This court has no power to re-examine such a question. American Surety Co. v. Baldwin, 287 U. S. 156, 166, 53 S. Ct. 98, 77 L. Ed. 231.

■ There is still another consideration which should not be overlooked, although it may not be at all controlling. The plaintiff acquiesced in the reargument which the Supreme Court ordered. It clearly appears from the brief, printed with the official report of the case when it was before the court for reargument, that the plaintiff then made no contention that the Supreme Court was without jurisdiction to order a reargument while a motion for a rehearing was pending. If there was any merit in the contention now made, the plaintiff should have urged it upon the Supreme Court then. Plaintiff did not urge it. If the reargument had resulted favorably to the plaintiff, it may reasonably be supposed he never would have raised it but would have accepted the victory he had gained. It does not greatly appeal to a court of equity that such a point should have been saved until after the Supreme Court had rendered its second judgment. Obviously if the point had been timely raised it would have been a simple matter for the court to make a formal order sustaining the motion for a rehearing and then to have heard the reargument of the case.

My conclusion is that the judgment is not void for the reason given, that whether it is res adjudicata, and that in any event the question is not timely raised.

■ Moreover, a court of equity will not enjoin the enforcement of a judgment *merely because it is void*. It will be enjoined only if it appears that it would be unconscionable to enforce it. The judgment may be void because, for instance, he, against whom it was rendered, never was notified of the proceeding and had no knowledge of it. He never had his day in court. It would be unconscionable to enforce such a judgment, not because it is void merely, but because the defendant never was heard and never had opportunity to be heard. If, however, he was duly served with summons and was given full opportunity to defend and then judgment was entered against him, I do not think a court of equity will hear his complaint that the judgment is void because, let us say, it was entered on Sunday, especially if that was done with his acquiescence and without any objection on his part. Similarly I can see nothing shocking to the conscience in the enforcement of a judgment which, if it be void, is void only because a rehearing was called a reargument when in fact it was a rehearing, especially when the party now complaining acquiesced in the reargument, made no objection to it whatever, although knowing it really was a rehearing and was so considered by court and adversary.

## Is the Judgment Void Because Beyond the Pleadings?

2. It is contended by the plaintiff that the bill states grounds for equitable relief, in that it shows a judgment going beyond the issues made by the pleadings, and therefore void, and hence such a judgment as that a court of equity should enjoin its enforcement. More particularly the contention is that the petition upon which the case was tried in the state court was for the rescission of a contract fraudulently obtained and then for an accounting as between joint adventurers. It is urged that in such a proceeding a joint and several judgment cannot be entered, but that each joint adventurer is answerable only for the excess of profits received by him. The joint and several judgment in this case is not supported by the type of action stated in the petition nor within the issues made by the pleadings, and hence was beyond the jurisdiction both of the trial and the Supreme Court. Such is the contention of the plaintiff.

I do not consider that it is necessary to inquire whether, in an action for an accounting between joint adventurers, a joint judgment never may be had nor to inquire whether it is necessarily true that a judgment which is broader than the issues made by the pleadings is beyond the jurisdiction of a court, and therefore void. These are questions which not only could have been but were presented to the state courts and decided by them. They are res adjudicata, which for that reason cannot again be litigated in this independent equitable proceeding.

Whether the judgment was within the issues made by the pleadings, and whether the court had jurisdiction to enter the judgment, were matters which the defendants in the case in the state courts presumably raised in the motion for a new trial after the first judgment in the trial court, again on the appeal from the order sustaining that motion, again in the Supreme Court on the reargument of the case, again in the trial court on the second trial, again on the second motion for a new trial in that court, again in the Supreme Court on the second appeal, and again in the final motion for a rehearing in the Supreme Court. Whether the questions were raised at each of these opportunities, they were raised on the last appeal and, as a reference to the opinion of the Supreme Court clearly indicates, they were passed on by that court. It was there decided, as presumably it had been decided by the trial court, that the joint and several judgment was within the issues made by the pleadings and did not go beyond the jurisdiction of the court.

Although learned counsel have sought to escape the decision of the Supreme Court of the United States in American Surety Company v. Baldwin, 287 U. S. 156, 53 S. Ct. 98, 101, 77 L. Ed. 231, I think there is no escape from the effect of that decision. There it is said that: "The principles of res judicata apply to questions of jurisdiction as well as to other issues. * * * They are given effect even where the proceeding in the federal court is to enjoin the enforcement of a state judgment, if the issue was made and open to litigation in the original action, or was determined in an independent proceeding in the state courts."

It had been contended by the American Surety Company that the state court (Baldwin v. Anderson, 50 Idaho, 606, 299 P. 341) which had rendered a judgment against it had no jurisdiction of its person, that judgment had been rendered against it without notice, and therefore in violation of the due process clause of the Fourteenth Amendment. It had sought to enjoin in a federal court the enforcement of a judgment which it contended was void for the reasons stated. Its bill had been dismissed by the United States District Court. 51 F. (2d) 596. The District Court was reversed by the Court of Appeals for the Ninth Circuit. American Surety Company v. Baldwin, 55 F. (2d) 555. The Court of Appeals had held that upon the facts stated in the bill the judgment which had been rendered against the surety company was wholly void as having been given without notice or hearing in violation of the federal Constitution. But the surety company had made that contention in the state court by filing in that court in the case in which the judgment had been rendered a motion to set aside the judgment for want of jurisdiction. The state court had passed upon the question thus raised and had ruled that it did have jurisdiction. It was with reference to such facts that the United States Supreme Court said that "the principles of res judicata apply to questions of jurisdiction as well as to other issues."

Baldwin v. Iowa State Traveling Men's Association, 283 U. S. 522, 51 S. Ct. 517, 518, 75 L. Ed. 1244, cited in American Surety Company v. Baldwin, is equally in point. There it is ruled that the judgment of a court on the question as to whether it has jurisdiction over the person of a litigant is res adjudicata as to that question. The litigant having been once heard upon the question, he

cannot again in any other proceeding have that question litigated, for, said the Supreme Court: "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause."

Now, if the decision of a court that it has jurisdiction of the person of a litigant provided he has been heard upon that question is forever conclusive against him as to whether the court did have jurisdiction, by precisely the same reasoning the conclusion must be reached that the decision of a court that its judgment is within the issues and that, therefore, it is within the jurisdiction of the court to render it, provided the litigant has been heard upon that very question or might have been heard upon it, is also forever after incontestable by that litigant.

It is said by counsel in their brief that to give to the language used by the Supreme Court in the two cases cited such an interpretation is in effect to repeal the Fourteenth Amendment to the Constitution. The observation proceeds from a misapprehension of the amendment. The amendment provides that no state shall deprive any person of life, liberty, or property without due process of law. But as was said by the Supreme Court in the Baldwin Case, there is involved in the doctrine of due process of law "no right to litigate the same question twice."

Even if the questions sought to be raised are not res adjudicata, there is still another reason for holding against plaintiff on this point. It will be found that those cases in which a collateral attack has been permitted on a judgment on the ground that it was broader than the issues made by the pleadings, were cases in which the litigant, thereafter attacking the judgment, never was heard at all upon the question as to whether the judgment was beyond the issues and not within the jurisdiction of the court in the particular case tried. To enforce such a judgment might well be unconscionable.

The distinction I seek to make is clearly presented by the Supreme Court in Reynolds v. Stockton, 140 U. S. 254, 264, 11 S. Ct. 773, 776, 35 L. Ed. 464. In that case it was said:

"The requirements of that section [the full faith and credit clause of the constitution], are fulfilled when a judgment rendered in a court of one state, which has jurisdiction of the subject-matter and of the person, and which is substantially responsive to the issues presented by the pleadings, *or is rendered under such circumstances that it is apparent that the defeated party was in fact heard on the matter determined*, is recognized and enforced in the courts of another state." Again it was said in the same case: "Take an extreme case: Given a court of general jurisdiction, over actions in ejectment as well as those in replevin; a complaint in replevin for the possession of certain specific property, personal service upon the defendant, appearance, and answer denying title. Could (*there being no subsequent appearance of the defendant and no amendment of the complaint*) a judgment thereafter rendered in such action for the recovery of the possession of certain real estate be upheld? Surely not, even in the courts of the same state." It was said again in the same case: "That a judgment, to be conclusive upon the parties to the litigation, must be responsive to the matters controverted. Nor are we concerned with the question as to the rule which obtains in a case in which, while the matter determined was not, in fact, put in issue by the pleadings, it is apparent from the record that the defeated party was present at the trial and actually litigated that matter. *In such a case the proposition so often affirmed, that that is to be considered as done which ought to have been done, may have weight, and the amendment which ought to have been made to conform the pleadings to the evidence may be treated as having been made.*"

The present case is one which falls within the exception to the rule rather than within the rule. This was no case in which the losing party, relying upon the issues made by the pleadings, finds himself confronted by a judgment broader than the pleadings, and which he could not anticipate. Against such a judgment equity should raise its hand and will do so if the principle of res adjudicata does not prevent it. But this is no such case as that. Here the ultimately defeated party at all times participated in the litigation of the case and did so after the issues were broadened, if they were broadened, having full opportunity to defend against such broadened issues and full opportunity to question the scope of the judgment rendered.

I resolve this contention also against the plaintiff.

### Newly Discovered Evidence.

3. So far I have discussed the first general contention of the plaintiff in support of his bill, that the bill states a cause of action because it shows that the judgment sought to be enjoined is void. The second general contention now to be discussed is that the judgment was obtained by fraud and accident. The authorities place under the head of "accident," as used in this connection, such an accident as ignorance of evidence which would have prevented the judgment and which evidence has been newly discovered since the judgment was obtained. The plaintiff undertakes to plead a case justifying equitable interference with a judgment on this ground of newly discovered evidence.

Under certain circumstances undoubtedly a court of equity will restrain the enforcement of a judgment because of newly discovered evidence. I approach the question as to whether the bill here states such a case by setting out the rules which limit equitable interference with a judgment on this ground. They are:

1. The newly discovered evidence relied on must be *evidence,* that is, it must be competent. 2. It must be *newly* discovered, that is, it must have been discovered at a time too late for use at the trial resulting in the complained of judgment. 3. The failure to discover it when it could have been issued must not be due to any lack of diligence. 4. It must be more than merely cumulative. 5. It must be evidence of such a character as that it proves conclusively that a wrong judgment was had.

Only the last of these rules perhaps requires citation of supporting authorities and some elaboration. I have found no more authoritative statement of the rule than that of the Supreme Court in Pickford v. Talbott, 225 U. S. 651, 657, 658, 32 S. Ct. 687, 689, 56 L. Ed. 1240. There it is said that: "In order to warrant the interposition of a court of equity to restrain the enforcement of a judgment at law, it is, of course, not sufficient for the defeated party to show that because of some newly discovered evidence pertaining to an issue in the case, or because of some newly discovered fact that might have been put in issue, he would probably have a better prospect of success on a retrial of the action. He must show something to render it manifestly unconscionable for his successful adversary to enforce the judgment." It is said again in the same case that: "One who seeks relief in equity against a judgment at law on the ground that * * * he has lost the benefit of a defense that would have been available in the court of law * * * must * * * make it manifest that the judgment against him is wrong on the merits, that he ought in justice to prevail, and that upon a retrial, with the aid of the newly discovered matter of fact or of evidence, it is reasonably certain that he will prevail." And in the same case the general principles thus stated are construed by the Supreme Court as being equivalent to a requirement that the new evidence must be of such a character as to "conclusively establish" and to "render it clear beyond reasonable doubt" that a different verdict would result if a new trial were had.

The same rule was stated in somewhat different language by the Supreme Court of West Virginia in Bloss v. Hull, 27 W. Va. 503. That court said that the newly discovered evidence must be "sufficient to utterly destroy the former testimony by showing that it was entirely false or founded on perjury." And the Supreme Court of North Carolina said, in Houston v. Smith, 41 N. C. 264, that the newly discovered evidence must be more than proof opposing testimony introduced to support the judgment; it must "destroy" that testimony.

How very stringent is the rule even more clearly is indicated by the Supreme Court of the United States in United States v. Throckmorton, 98 U. S. 61, 66, 25 L. Ed. 93. There it is said: "The doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed." In the same case the Supreme Court said: "The mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, *and which are afterwards ascertained to be forged or fraudulent,* would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

Considering this rule one will at once conclude that it is next to impossible to state a case falling within it. And there have been less than a half dozen cases in the judicial history of the country which have been held to come within it. (A larger number have been within the less stringent rule recognized by some of the state courts.)

If a bill is to meet the requirements of this rule as well as of the others, it must allege the necessary facts and not mere conclusions.

In so far as the bill is bottomed on the theory of newly discovered evidence it is to be determined now whether, accepting as true its allegations of fact, it meets the requirements which the rules impose. If it does not meet the requirements of any one of them, then, so far as this theory is concerned, the bill is insufficient.

The alleged newly discovered evidence consists of eleven documents which were found among the papers of one Rozelle, an attorney at law, found among his papers after his death. He had been the attorney, it is alleged, of the several corporations which were involved in the state case and also of the stockholders of these corporations in their individual capacities. As such he was familiar with the affairs of all of these corporations and of the stockholders and particularly with the negotiations preceding and leading up to the contract of sale wherein Wolcott claimed to have been defrauded of his rightful share in a joint adventure.

The eleven documents of which the newly discovered evidence consists are: (1) A copy of a telegram purporting to be signed by one Flannelly; (2) a copy of a telegram purporting to be signed by Rozelle, Vinyard & Thatcher; (3) a copy of what is entitled a "Proposition of Compromise," which purports to adjust differences between the Guyton & Harrington Mule Company and the Stockyards Horse & Mule Company as to the division of profits from the sale of horses and mules to the British government; (4) an unsigned copy of a letter addressed to the Stockyards Horse & Mule Company and the Guyton & Harrington Mule Company; (5) a letter signed by R. J. Ingraham, addressed to F. F. Rozelle, acknowledging receipt of a copy of a proposed settlement; (6) a copy of an unsigned letter addressed to J. C. Wolcott, referring to a proposed agreement of settlement purporting to be inclosed with the letter; (7) a copy of an unsigned agreement of compromise and settlement of a controversy between the Stockyards Horse & Mule Company and the Guyton & Harrington Mule Company; (8) a copy of an unsigned letter addressed to R. J. Ingraham, referring to conferences concerning disputes between the Stockyards Horse & Mule Company and the Guyton & Harrington Mule Company and particularly commenting on a possible sale of the interest of Grant; (9) a copy of an un-

signed document entitled "An Agreement" and purporting to be an agreement between the Stockyards Horse & Mule Company and the Guyton & Harrington Mule Company, compromising and settling controversies between those companies as to the division of profits; (10) a copy of an unsigned letter addressed to R. J. Ingraham, referring to the possible purchase of the interest of Grant in the Harrington & Guyton Mule Company; (11) a copy of an unsigned letter addressed to Wolcott, referring to the sale made by Grant of his interest in the horse and mule business and comparing what Grant received for his interest with what Wolcott had received for his.

The plaintiff in his bill, and counsel for the plaintiff in their brief, ascribe great virtue to these documents. They say that these documents prove: (1) That in 1915 and 1916 there was a controversy between minority stockholders Wolcott, Biers, and Grant, representing the Stockyards Horse & Mule Company, and Guyton and Harrington, representing the Guyton & Harrington Mule Company, of a division of the war business of these companies; (2) that they prove that Wolcott, at the time of the sale of his interest to Guyton, was not asserting the existence of an agreement of joint adventure, but was pursuing a course of conduct so inconsistent with such an agreement as to totally disprove its existence; (3) that they prove that if Wolcott did contend that there was an agreement of joint adventure the contract by which he sold his shares of stock to Guyton included a release of any claim based on that contention and included complete accord and satisfaction as to it; (4) that they prove that Wolcott was thoroughly familiar with the business and profits of the corporations involved and could not, therefore, have been victimized by false and fraudulent representations as to such profits; (5) that they prove that Wolcott's testimony that he had the same interest in the business and in the profits of the Guyton & Harrington Mule Company as in the Stockyards Horse & Mule Company was false; (6) that they prove that Wolcott's testimony that he relied on the statements made to him by Rozelle that his share of the profits of the joint adventure was $340,000 was false. In summary it is alleged that the newly discovered evidence proves "to a demonstration that Wolcott's claim of joint adventure and fraud were wholly false and untrue." These are but conclusions. They are not allegations of facts. The facts are the documents discovered.

Comes now the application of the rules stated to the newly discovered evidence and the facts which are alleged in connection with it.

It may be said that it is quite apparent that learned counsel for the plaintiff when drawing the bill had in mind all the rules and endeavored to meet the requirements of each of them. I think they have not succeeded.

Except for an allegation of fact which I shall indicate, the newly discovered evidence does not satisfy the first of the several rules. No one of the documents constituting it would be competent as an admission by Wolcott against his interest. No one of them was drawn by him or signed by him. I can think of no theory upon which any one of them would be admissible in evidence without proof that Wolcott had knowledge of its contents. Evidently it is upon the ground that he had such knowledge that counsel would urge their admissibility. They would rely upon the following allegation in the bill: "That the documents so discovered * * * passed and were exchanged between Wolcott, Rozelle, Grant and Grant's attorneys, Guyton, Harrington and Biers, and the two corporations immediately preceding and at the time of the sales by Wolcott and Grant to Guyton." I consider that this allegation is enough to show that the newly discovered documents would be competent in evidence and would be evidence.

I am convinced, however, that this allegation which saves the bill from the effect of the first rule compels the conclusion that the documents in question are not *newly discovered* evidence at all and so there is failure to meet the requirements of another rule. For here is an allegation that these documents were known to all of the parties at the time of their execution and long before the trial. Indeed, the allegation is repeated in another form, for it is alleged that: "The existence of the letters and documents * * * had either wholly passed out of the recollection of defendants or the significance of said documents and letters as bearing upon the claim of joint adventure was unknown to them; that defendants were laymen, and, at the time of the institution of the suit, advanced in years."

That is not newly discovered which was known and forgotten and then thought of again. I should be surprised if there can be found a case (I have found none) in which either a motion for a new trial has been granted on the ground of newly discovered evidence, or in which a court of equity has enjoined the enforcement of a judgment on that ground where it is confessed, as it is confessed here, that the party relying on the newly discovered evidence knew about it and knew that it existed but had forgotten the circumstances or did not appreciate their significance and value. If mere forgetfulness were an alibi for that diligence which the law requires, motions for new trials would be sustained and injunctions against judgments on the ground of newly discovered evidence would be issued in as many instances as there are cases tried.

I think also that this so-called newly discovered evidence must be said to be merely cumulative. Counsel argue and allege in the bill itself that it proves to a demonstration that there was no joint adventure and that there was no fraud. But these were the very issues in the trial. Certainly evidence against the claims of joint adventure and of fraud were offered or might have been. The parties charged with having entered into the oral agreement of joint adventure and with having perpetrated the alleged fraud were in position to give the best possible testimony on those subjects. That they did give such testimony was conceded at the argument of this motion and is fully set out in the opinions of the Supreme Court to which counsel for the plaintiff here have said it is permissible to go in this case. If that is true, then, at least in a broad sense (if not in the strictly technical sense in which some courts have said that that evidence is not merely cumulative which is of a different type, although bearing on the same issue as other testimony), this newly discovered evidence is merely cumulative.

But whether the newly discovered evidence is competent at all, whether it can be said that it is newly discovered within the meaning of law, whether it can be said that it is only merely cumulative, there is one thing which can be said, I think, with absolute certainty, and that is that this newly discovered evidence does not conclusively nor beyond a reasonable doubt show that the judgment was wrong. One reading the documents discovered and re-reading them many times gets from them only the most vague and shadowy impressions and possible inferences. It is impossible to justify from the documents themselves the conclusions drawn by the plaintiff and alleged in his bill.

Let us take a much stronger case than plaintiff has stated. Let us suppose that instead of these vague, indefinite, ambiguous,

unsigned, unexecuted papers, there had been found a letter signed by Wolcott himself, and that in that letter he had stated: First, that there was no oral agreement of joint adventure between him and others; second, that the only controversy which ever had existed as to the profits from the sale of horses and mules to the British government was a controversy between the corporations; third, that he was fully aware of the total of the profits derived from the business; fourth, that he had received all that he was entitled to by the sale of his shares of stock in a written contract of purchase and sale. That would have been newly discovered evidence of some significance, but even that would not support a bill in equity to enjoin a judgment. It would have tended only to impeach the testimony given by Wolcott at the trial. It would have suggested that his testimony there given was perjured and was false. But the Supreme Court of the United States has said (United States v. Throckmorton, supra) that even such newly discovered evidence is not sufficient. That it is not sufficient to justify an injunction against a judgment by a court of equity is the general rule. 34 C. J. 475.

 My conclusion here is that the bill does not allege newly discovered evidence of such a character as to demonstrate beyond a reasonable doubt that the judgment was wrong or that a different judgment would be reached at another trial. It must be conclusively presumed that the judgment was based upon evidence supporting it. The allegation in the bill that it was not supported by any evidence is a mere conclusion. Moreover, it is an impossible conclusion in the face of the irrefutable presumption which in this respect attaches to all judgments.

### Minor Contentions.

 4. I do not here discuss in detail certain minor contentions made by plaintiff's counsel. One is: The petition in the case in the state courts stated no cause of action. The answer is: Res adjudicata. Another is: The Supreme Court acted not judicially but arbitrarily and so denied due process of law. Again the answer is: Res adjudicata and, besides, there was the right of appeal or to petition the Supreme Court of the United States for certiorari. A third contention is: Denial of due process in other ways than by arbitrary action. The answer is the same.

A fourth contention is: The judgment was obtained through fraud. But the fraud suggested is that Wolcott's claims were false. That was fraud intrinsic in the case. The law is: "That the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." United States v. Throckmorton, supra.

### The Stipulation.

 5. The bill then does not state facts entitling the plaintiff to an injunction against the enforcement of the judgment. It is that primarily which the plaintiff seeks. Incidental relief is asked also against the enforcement of a certain stipulation.

Touching this last-mentioned matter the facts alleged are these: When the judgment was obtained in the state trial court the plaintiffs and defendants in that case entered into a stipulation whereby the defendants deposited with the Commerce Trust Company securities of great value which, by the terms of the stipulation, if the judgment finally should be affirmed, were to be used to pay the judgment. While the amended bill does not so allege (the original bill does so allege), this stipulation was executed by the defendants in the state case in lieu of the requirement of the law of Missouri that an appeal bond should be given to secure the judgment.

The bill alleges that unless restrained the defendant Denny will cause this stipulation to be enforced and the securities deposited to be sold in satisfaction of the judgment.

So far as relief is asked against this stipulation on the ground that enforcement of the judgment itself should be enjoined, it is obvious that the conclusions I have stated as to that dispose of this matter also. If, in effect, the judgment were struck down, probably, although not necessarily, the stipulation also should fall with it. But if the judgment stands, the stipulation stands as against any attack based on a contention that enforcement of the judgment should be enjoined.

The relief asked against the stipulation in the prayer of the bill is only that which might follow if it were decided that the bill states a cause of action for an injunction against the judgment. But in the brief of counsel it is urged that there are sufficient

allegations in the bill to constitute an entirely independent cause of action in equity for the restraint of the enforcement by defendant Denny of the stipulation. The bill alleges, it is pointed out, that the provisions of this stipulation were violated by Denny and that, therefore, he should not be permitted to enforce the stipulation.

The violations charged against Denny seem relatively insignificant, but whether that be true, the facts stated are insufficient to justify any relief in equity against the stipulation. The securities deposited with the trust company, the bill alleges, are of a less value now than the amount of the judgment. The judgment is final. It is unassailable in equity. The defendant is entitled to an execution. The securities deposited with the Commerce Trust Company are the property of those against whom there is this joint and several judgment. If the stipulation were canceled, or if enforcement of it were enjoined, the plaintiff would profit nothing, since the securities deposited could be seized under execution. A court of equity will not make an empty gesture nor enter a decree which would be wholly fruitless of any real relief.

It is alleged in the bill also, in this same connection, that the enforcement of the stipulation should be restrained for that the country now is in a period of depression and that the securities deposited with the Commerce Trust Company are greatly depreciated from their true value. The hope of the plaintiff is that if the sale of these securities is restrained temporarily at a later time they may be worth more. If they are sold now, so it is alleged, they will not satisfy the judgment and the deficiency will be collected from the plaintiff and his associates. Therefore, it is urged, at least for the time being, enforcement of the stipulation should be restrained.

As to this somewhat novel theory I can say only that there is no law to support it. The sale of property pledged to secure a debt will not be stayed because it is insufficient wholly to extinguish the obligation.

### Order.

The motion of the defendant Younger R. Denny, executor of the estate of Josiah C. Wolcott, deceased, to dismiss the plaintiff's amended bill, having been duly considered by the court, and the court being fully advised in the premises, is by the court sustained. The bill is dismissed as to the defendant Younger R. Denny. It is so ordered.