### UNITED STATES v. DUNBAR.

#### No. 36793.

District Court, E. D. New York.

June 10, 1944.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y., and Maurice Z. Bungard, Asst. U. S. Atty., of Brooklyn, N. Y., for plaintiff.

Frank J. Walsh, of New York City, for defendant.

GALSTON, District Judge.

The defendant moves to vacate a plea of guilty which he made in this court on July 22, 1936, to an indictment which charged him in two counts with violations of 18 U.S.C.A. §§ 263 and 265. The first count sets forth that on July 3, 1936 he attempted to pass a counterfeit twenty dollar bill on one Sadie Siegler; and the second count charges him with possession of the same counterfeit twenty dollar bill with intent to pass, publish, utter and sell the same.

The motion is supported by his affidavit, from which it appears that he is at present confined in Attica State Prison in Attica, New York, under a sentence of thirty to sixty years as a second felony offender. He asserts that on his arraignment on July 22, 1936, in the United States District Court for the Eastern District of New York, "he was not advised of his right to counsel by the court or by any officer of the court, contrary to the Sixth and Fourteenth Amendments of the United States Constitution;" also that he was not represented by counsel and that at no time did he waive the right to the assistance of counsel. In consequence he contends that the court was without jurisdiction and that the sentence was illegal.

The term of court during which the sentence was imposed upon the defendant following his plea of guilty has, of course, long since expired. There is some question, therefore, whether in view of United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129, a motion now made to set aside the judgment can be entertained. See also Kelly v. United States, 9 Cir., 138 F.2d 489. Of course, applications for writs of habeas corpus, irrespective of the expiration of the court term, may be made at any time. But the process of habeas corpus is not available to this defendant, for he is not in custody under the sentence of this court, and he does not by this application seek release from the custody of the warden of the state prison.

The defendant's sole citation of authority is Matter of Lyons v. Goldstein, 290 N.Y. 19, 47 N.E.2d 425, 428, 146 A.L.R. 1422. In that case the defendant sought to set aside a judgment of conviction on the ground that it was procured by fraud. The motion was granted, for it was held that "the inherent power of a court to set aside its judgment which was procured by fraud and misrepresentation cannot be doubted," citing two civil cases, Furman v. Furman, 153 N.Y. 309, 47 N.E. 577, 60 Am.St.Rep. 629; Matter of Holden, 271 N.Y. 212, 2 N.E.2d 631. The court was of opinion that "no logical distinction can be made between such power over judgments in civil cases and such power over judgments in criminal cases."

In the federal courts such power on the civil side by a bill of review has long been recognized. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 64 S.Ct. 997; Pickford v. Talbott, 225 U.S. 651, 32 S.Ct. 687, 56 L.Ed. 1240; Art Metal Works, Inc., v. Abraham & Straus, Inc., 2 Cir., 107 F.2d 940; United States v. Irving Trust Co., D.C., 49 F.Supp. 663. On the other hand a motion to set aside an alleged collusive decree will not be entertained. Jackson v. Irving Trust Co., 311 U.S. 494, 61 S.Ct. 326, 85 L.Ed. 297, affirming Sorenson v. Sutherland, 2 Cir., 109 F.2d 714.

680

However, on the premise that if the defendant was deprived of his constitutional rights, and accordingly that the judgment was void, and that this court has jurisdiction to entertain a motion to set aside the judgment after the expiration of the term ar.d after the sentence has been served, and that the matter is not wholly moot, involving a possible cloud on the criminal record of the defendant, a hearing was held to determine the issue by the examination of witnesses rather than on affidavits.

The sentence of two years imposed by the court on July 27, 1936, was served by the defendant at the federal prison at Chillicothe, Ohio. Shortly after his release from the federal prison in 1938, he pleaded guilty to the charge of robbery in the County Court of Bronx County, State of New York. Under the state statute known as the Baumes Law, a mandatory sentence was imposed to serve a prison term of not less than thirty years and not more than sixty years. Accordingly the real objective of his counsel is to have the plea of guilty entered in this court vacated in the hope that he might be resentenced in Bronx County Court. It may be noted that at the time he pleaded guilty to the robbery indictment he was represented by counsel.

The defendant in this hearing testified that he was seventeen years of age at the time he pleaded guilty to the federal indictment; that he was not represented by counsel; that at the time he pleaded guilty he was not advised either by the court or by the clerk of his right to the assistance of counsel; that he did not know that he had a right to have counsel; that he did not waive the right to counsel.

He testified that on March 28, 1936 he was arrested for possessing and passing a counterfeit ten dollar note, though there was no indictment found with respect to that act; that on July 3, 1936 he was arrested for passing a twenty dollar counterfeit United States bill; that he was taken to the office of the United States Secret Service and that he made a statement to agent Fitzgerald of that bureau. He told Fitzgerald that he had purchased the counterfeit twenty dollar bill for two dollars, knowing that it was counterfeit; that on July 6, 1936 he was brought to the Federal Building and arraigned before a United States Commissioner. He admitted that he was there informed that he was charged with possession and passing of that bill. He did not recall that he was told at that time that he had the right to a lawyer. He admitted that when arrested he gave the name Peterson, and an address in Staten Island; that he had attempted to pass the twenty dollar counterfeit bill and that he knew at the time what he was doing was unlawful.

Fitzgerald testified that before taking the defendant's statement he had informed the defendant of his constitutional rights. Nevertheless the defendant admitted that he had purchased the bill for two dollars, held it for two weeks because he was afraid to pass it, knowing it to be counterfeit; he admitted attempting to pass a ten dollar bill in March, 1936.

Fitzgerald signed the complaint which was presented to the United States Commissioner and attended when the defendant was arraigned before the Commissioner. Fitzgerald said that the defendant was advised by the Commissioner of the charge against him, and was informed that he was entitled to consult with his friends and relatives, and that he was entitled to counsel. Fitzgerald testified that the defendant admitted his guilt before the Commissioner and that the Commissioner held him in the sum of $3,000 bail for action by the Grand Jury. Fitzgerald also testified that he was present on the day of arraignment in 'this court; that the clerk of the court read the charge and informed the defendant that he was entitled to counsel; that the defendant stated he was guilty and did not need counsel, and that the clerk also informed him that as a result of his plea he might go to jail.

Sergeant John R. Scott, Jr., formerly clerk of the court, assigned to the criminal part for the month of July, 1936, and now in service in the United States Army, could not recall the defendant, but testified that "My practice is to arraign all defendants, and upon the arraignment read the indictment to him every time as to what he is specifically charged with, that he has the right to plead guilty or not guilty if he so desires: if he pleads guilty, the court may or may not send him to jail upon that plea, as he pleaded guilty or not guilty."

He admitted, in answer to the question "Is it your custom, Sergeant Scott, or was it your custom, that when a defendant appeared before the bar of justice alone, to inquire whether or not that individual had or had not counsel or a lawyer?" that "I don't know in that particular year that was the practice or not; it became a practice

some years—I don't recall the year—that we must advise them of their right to have counsel assigned, and those years I don't know whether that was the custom."

Later: "I always asked them, if they appeared alone, do they have a lawyer * * * if they haven't got a lawyer; if they want a lawyer, and what. do they plead, after reading the indictment to them."

Finally, in cross-examination, in answer to the question "So that you did not instruct the prisoner under your old system of his right to have counsel?" He said: "No sir."

The United States Commissioner before whom the defendant was brought by the United States Secret Service agent testified that in addition to advising the defendant of the charge, "I asked him whether he had counsel; I told him he had the right to an attorney; I told him he had the right to consult his friends and relatives; and that anything he would say could be used against him," but that thereupon the defendant pleaded guilty.

It was urged by the defendant's counsel at the hearing that the defendant, at the time of the commission of the federal offence, was but seventeen years of age; that his schooling had been limited, and that those facts should be taken into consideration in passing on the question here presented.

■ Undoubtedly, under the Sixth Amendment, one accused of crime has the right to the aid of counsel in his defense, but that is not to say that the right may not be waived provided it is waived intelligently, understandingly and in a competent manner. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L. R. 357. There it was said: "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances sur-

rounding that case, including the background, experience, and conduct of the accused."

Moreover the waiver of such right, if thus made intelligently, "will ordinarily be implied where the accused appears in court without counsel and does not request or indicate in any way a desire that counsel be assigned to assist him." Macomber et al. v. Hudspeth, Warden, 10 Cir., 115 F.2d 114, 116, certiorari denied 313 U.S. 558, 61 S.Ct. 833, 85 L.Ed. 1519.

■ It is the defendant's unsupported testimony that he was not informed of his constitutional right to have counsel against the testimony of the Secret Service agent that he was so advised, not only when arraigned on the indictment but also before the United States Commissioner prior to indictment. The clerk's testimony on the subject is not too clear, but I have no doubt that the defendant knew exactly what he was doing and knew exactly what his rights were. I must conclude that there was an implied, if not express, waiver of the right to counsel, and that such waiver was given intelligently, understandingly and in a competent manner, as required under Johnson v. Zerbst, supra. Even a boy of seventeen, knowing a twenty dollar bill to be counterfeit and purchasing it for two dollars with the intent of passing it off, as did this defendant, could not by any stretch of the imagination be in doubt concerning the nature of his act and that it was in violation of law.

This conclusion carries with it no reservation of doubt whatsoever. The defendant admitted his guilt, not only before the court on arraignment, not only to the Secret Service agent, to the United States Commissioner and to the court, but also to the Probation Officer of this court, in his pre-sentence report to the court. Finally, in his testimony at this hearing, he repeated his confession of guilt; and admitted that he knew at the time of the commission of the act that his act had been unlawful.

The motion, therefore, to vacate the judgment is accordingly denied.